Argued and submitted January 11, 2005, petition for review dismissed as moot
March 23, reconsideration allowed by opinion August 3, 2006
See 341 Or 200, 140 P3d 1131 (2006)

Jeffrey B. KERR,
Michael Kelley, and Jann Carson,
*Respondents on Review,*

*v.*

Bill BRADBURY,
Secretary of State
for the State of Oregon,
*Petitioner on Review.*

(CC 02C-21814; CA A121744; SC S51503)

131 P3d 737

See also 194 Or App 133, 93 P3d 841.

Jas. Jeffrey Adams, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Charles F. Hinkle, ACLU Foundation of Oregon, Inc., argued the cause and filed the briefs for respondents on review.

Before Carson, Chief Justice,** and Gillette, Durham, Riggs, De Muniz,*** Balmer, and Kistler, Justices.

DE MUNIZ, C. J.

---

** Chief Justice when case was argued.

*** Chief Justice when decision was rendered.

**DE MUNIZ, C. J.**

This case concerns a challenge to the Secretary of State's decision to approve an initiative petition for circulation. After both the trial court and the Court of Appeals ruled on the Secretary of State's action, the initiative petition ultimately was not certified to the ballot. As we shall explain, we conclude that the case is not justiciable, and we therefore dismiss the petition for review as moot.

Oregon Citizens Alliance (OCA) submitted a proposed initiative petition to the Secretary of State for placement on the November 2004 ballot. That petition sought to amend two existing statutes, but included only the amendatory text. The Secretary of State approved the petition for circulation and designated it Initiative Petition 16 (2004). Plaintiffs subsequently sought declaratory and injunctive relief against the Secretary of State on the ground that Initiative Petition 16 violated the "full-text" provision of Article IV, section 1(2)(d), of the Oregon Constitution.[1] Plaintiffs also moved for an award of attorney fees. The trial court granted the Secretary of State's motion for summary judgment, but on review, the Court of Appeals reversed, concluding that Article IV, section 1(2)(d), requires initiative petitions to include the entire text of the statute to be amended, not just the amendatory text. *Kerr v. Bradbury*, 193 Or App 304, 89 P3d 1227 (2004). Later, in a separate opinion, the Court of Appeals awarded plaintiffs attorney fees. *Kerr v. Bradbury*, 194 Or App 133, 93 P3d 841 (2004). Ultimately, OCA failed to submit the requisite number of signatures from registered voters, and Initiative Petition 16 consequently was neither certified nor placed on the November 2004 ballot.

■ For separate reasons, both parties assert that this case nonetheless remains justiciable, and they both ask this court to interpret the full-text provision of Article IV. The Secretary of State asserts that the case is not moot because

---

[1] Article IV, section 1(2)(d), provides:

"An initiative petition shall include the full text of the proposed law or amendment to the Constitution. A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected therewith."

he now must comply with the Court of Appeals decision, which will continue to have a practical effect on his responsibilities. He argues, therefore, that this court's review is necessary to ensure a proper interpretation of the full-text provision of Article IV, section 1(2)(d), in the future. Plaintiffs, on the other hand, assert that the Court of Appeals decision to award attorney fees prevents application of the mootness doctrine. For that proposition, plaintiffs rely on *2606 Building v. MICA OR I Inc.*, 334 Or 175, 47 P3d 12 (2002). In *2606 Building*, this court observed that, although the lease at issue in that case had expired prior to its decision, the case itself was not moot because the propriety of the attorney fees awarded below depended on the correctness of the underlying trial court judgment respecting the meaning of certain terms of that lease. *Id.* at 179 n 2.

■    In *Yancy v. Shatzer*, 337 Or 345, 97 P3d 1161 (2004), this court explained that, under the Oregon Constitution, application of judicial power is limited to the resolution of justiciable controversies. *Id.* at 349. A controversy is justiciable when " 'there is an actual and substantial controversy between parties having adverse legal interests.' " *Id.* (quoting *Brown v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982)). The absence of such a controversy means that a decision from this court in such a case would be moot because it would no longer " 'have some practical effect on the rights of the parties to the controversy.' " *Id.* (quoting *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993)).

We do not agree with the Secretary of State that a decision from this court is necessary in this case because of the practical effect that the Court of Appeals decision will have on his duties. Rather, we deem that argument to be a request for an advisory opinion. As this court explained in *Yancy*, the judicial power extends to only "the adjudication of an existing controversy." *Yancy*, 337 Or at 362.

■    Likewise, we do not agree with plaintiffs that the Court of Appeals award of attorney fees maintains the justiciability of this case. Plaintiffs' rely on the following excerpt from *2606 Building*:

"Plaintiffs assert that this case is moot because the lease expired after the Court of Appeals issued its decision. We

disagree. The trial court awarded attorney fees as provided in the lease, and that award depends on the correctness of the trial court judgment. Because the attorney fees award is still in controversy and a decision from this court will have a 'practical effect on the rights of the parties,' the case is not moot."

334 Or at 179 n 2 (internal citations omitted). Plaintiffs are correct that, in cases such as *2606 Building*, this court has concluded that, although an underlying dispute between the parties has dissolved due to the passage of time, a trial court's award of attorney fees set forth in a final judgment nevertheless preserves justiciability of the underlying controversy. Generally, however, such cases are ones in which the trial court automatically awarded attorney fees to the prevailing party in accordance with a statute or the terms of a contract, and the appellant subsequently asserted its liability for those fees as a basis for the court to reach the merits. This case, however, is distinguishable from that scenario.

Here, the only award of attorney fees occurred at the Court of Appeals. The Court of Appeals made that award of attorney fees by separate order, and the Secretary of State has not sought review of that order in this court. Neither has the Secretary of State asserted the state's liability for attorney fees as a basis for this court to reach the merits of a complicated constitutional question that has dissolved for purposes of this case. Because the Court of Appeals award of attorney fees is not before this court, plaintiff is in no position to assert that the award of attorney fees is a basis for this court to reach the merits of the case.

Because Initiative Petition 16 was not placed on the ballot for the 2004 election, the underlying legal dispute between the parties in this case became moot. We cannot reach the legal issue that the parties wish to have decided because Article III (Amended), section 1, of the Oregon Constitution constrains this court from deciding a matter that is no longer a controversy between the parties. *See Yancy*, 337 Or at 363 (so stating).

■ We turn next to an issue that plaintiffs have raised regarding the appropriate disposition in this case. Plaintiffs recognize that this court has vacated previous judgments

when a case has become moot on appeal or on review. *See First Commerce of America, Inc. v. Nimbus Center Assoc.*, 329 Or 199, 209, 986 P2d 556 (1999) (court determined matter became moot in trial court, vacated Court of Appeals decision, and remanded to circuit court to vacate judgment disposing of third-party claims and to dismiss third-party claims). Nevertheless, plaintiffs argue that, if this court refuses to render a decision on the merits because we conclude that this case is moot, we should choose not to vacate the Court of Appeals decision because this case involves a recurring issue of public importance.

In *Nimbus*, this court acknowledged that it had been inconsistent in the manner in which it had disposed of appellate judgments after determining that the cases underlying those judgments had become moot. *Id.* at 208. *Compare, e.g., Oregon Republican Party v. State of Oregon*, 301 Or 437, 722 P2d 1237 (1986) (court determined that electoral matter became moot when election occurred, reversed Court of Appeals decision on the merits, and remanded to Court of Appeals with instructions to dismiss appeal) *with Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 738 P2d 1389 (1987) (court determined that case became moot when graduation ceremony took place, reversed Court of Appeals decision on merits, and remanded to circuit court with instructions to vacate circuit court judgment). After acknowledging that apparent inconsistency, the court stated:

> "On reflection, we hold that the better practice when a case becomes moot on appeal or on review is to vacate both the decision of the Court of Appeals and the circuit court judgment. *See Lowe v. Keisling*, 320 Or 570, 577, 889 P2d 916 (1995) (Unis, J., dissenting) (so stating). Reversal implies that a court incorrectly decided the case on the merits. Vacation of a decision, by contrast, suggests nothing about the propriety of the decision on the merits, because it conveys the message that the decision on the merits ought not to have been rendered at all (if the controversy was moot when the case was decided) or ought not have prospective effect (if the controversy became moot after the case was decided)."

*Nimbus*, 329 Or at 208-09.

In describing vacatur as "the better practice when a case becomes moot on appeal or on review," this court acknowledged that vacatur is an exercise of the court's equitable power, the use of which is dependent on the circumstances of a particular case. That said, however, we now conclude that, while that proposition—together with the principles of vacatur identified in *Nimbus*—was correct, it appears that this court's application of vacatur in *Nimbus* has continued to create some confusion. In an effort to provide a more thorough understanding of this court's use of the equitable power of vacatur, we take this opportunity to examine the doctrine in greater detail.

Several United States Supreme Court cases, beginning with *United States v. Munsingwear, Inc.*, 340 US 36, 71 S Ct 104, 95 L Ed 36 (1950), provide a helpful explanation of the equitable principles that underlie the doctrine of vacatur. In *Munsingwear*, the United States had brought a civil action against Munsingwear seeking an injunction and damages for the company's alleged violation of federal price control regulations. The government's claim for damages was held in abeyance pending a decision on its injunction claim. The injunction claim, however, ultimately was rejected by the trial court after it concluded that Munsingwear had not violated the relevant price regulations. The United States appealed that judgment, but, while the appeal was pending, the commodity at issue was decontrolled. Consequently, Munsingwear successfully moved to dismiss the government's appeal as moot, a disposition that the government did not challenge. The company then obtained dismissal of the government's damages action on *res judicata* grounds. The United States appealed that decision, but a divided Court of Appeals for the Eighth Circuit affirmed, and the United States Supreme Court subsequently accepted the case on certiorari.

Ultimately, the Supreme Court concluded that, by acquiescing in dismissal of the appeal without acting to nullify the consequences of the judgment below, the United States essentially had bound itself to the finality of that judgment as a matter of law. *Id.* at 40-41. In the course of articulating that proposition, however, the Court took the opportunity to explain why a request for vacatur would have been

the more appropriate response to Munsingwear's motion to dismiss for mootness:

> "The established practice of the Court in dealing with a civil case from a court in the federal system which has becomes moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss. That was said in *Duke Power Co. v. Greenwood County*, 299 US 259, 267, 57 S Ct 202, 81 L Ed 178, to be 'the duty of the appellate court.' *That procedure clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.* When that procedure is followed, the rights of all parties are preserved; none is prejudiced by a decision which in the statutory scheme was only preliminary."

*Id.* at 40 (emphasis added; footnote omitted).

At the time, the Supreme Court's categorization of vacatur as an equitable remedy appropriately employed when external events render a controversy moot was *dicta*. That changed, however, with the Court's decision in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 US 18, 115 S Ct 386, 130 L Ed 2d 233 (1994). *Bonner Mall* was a bankruptcy case in which the debtor, Bonner Mall, had sought to stave off foreclosure on its property by filing for Chapter 11 bankruptcy. A creditor, U.S. Bancorp Mortgage, moved for dismissal of the Chapter 11 action and relief from the automatic stay of foreclosure that usually accompanied such cases. After the bankruptcy court granted relief from the stay but refused to dismiss the bankruptcy proceedings outright, the case made its way through both the federal District Court and Court of Appeals for the Ninth Circuit. Eventually, the Supreme Court granted *certiorari*, but, after briefs on the merits were submitted, the parties agreed on a consensual plan of reorganization and settled their controversy. Both parties agreed that their settlement plan effectively mooted the case pending before the Court. Creditor U.S. Bancorp Mortgage, however, asked the Court to vacate the underlying decision of the Court of Appeals; debtor Bonner Mall opposed that action.

The Supreme Court ultimately agreed with the parties concerning the mootness of their case; however, it

declined to vacate the Court of Appeals decision below. In so ruling, the Court squarely addressed the application of vacatur on its merits:

"From the beginning we have disposed of moot cases in the manner ' "most consonant to justice" ... *in view of the nature and character of the conditions which have caused the case to become moot.' The principal condition to which we have looked is whether the party seeking relief from the judgment below caused the mootness by voluntary action.*

"The reference to 'happenstance' in *Munsingwear* must be understood as an allusion to this equitable tradition of vacatur. A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment. The same is true when mootness results from unilateral action of the party who prevailed below. Where mootness results from settlement, however, the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice."

*Id.* at 24-25 (emphasis added; internal citations and footnotes omitted). The Court went on to acknowledge that, although mootness by reason of settlement did not justify vacatur in the case before it, at the end of the day, such determinations were, ultimately, equitable ones, and therefore possibly subject to different outcomes in exceptional circumstances. *Id.* at 29. Together, *Munsingwear* and *Bonner Mall* present an analytical template that is helpful to this court's effort to develop more fully its own paradigm for addressing cases like the one before us now.

We now reexamine this court's decision in *Nimbus* in light of the principles underlying the equitable remedy of vacatur enunciated in *Munsingwear* and *Bonner Mall*. In *Nimbus*, a mortgage note holder sued the mortgagors for accelerated payment of their mortgage note, alleging that the mortgagors were in default on their loan. In addition to defending against that claim, the mortgagors initiated their own action against a third-party defendant, alleging that the third party had breached an earlier agreement to buy the

mortgage note and then sell it to the mortgagors at a discount. The mortgagors' third-party claims and their affirmative defenses were identical; indeed, the third-party claims in mortgagors' prayer for relief were expressly made dependant on the outcome of the note holder's claims against the mortgagors. The third-party defendant, however, successfully moved for summary judgment, and the trial court dismissed the claims against it; sometime after that, the mortgagors and the note holder settled their dispute.

Despite the fact that the mortgagors essentially had tied their third-party claims to the results of the note holder's action, the mortgagors nevertheless attempted to keep their third-party action alive by appealing the trial court's summary judgment dismissal of the mortgagors' third-party claims. Both the Court of Appeals and this court concluded that the mortgagors' third-party action had been mooted by their settlement with the note holder. At that juncture, however, this court mistakenly decided to vacate the judgment below, even though the equitable factors that generally justify such action were absent. The mortgagors' third-party claims had not become moot by external events; rather, they had become moot because the mortgagors had settled their case with the note holder and, with it, had relinquished the basis for their case against the third-party defendant. We hold, therefore, that, to the extent that this court's decision in *Nimbus* can be read unreservedly to require vacatur in the face of controversies mooted by settlement, such a reading is incorrect, and we expressly repudiate that proposition here.

From this point forward, this court will be guided by the principles from *Bonner Mall* quoted above and the observation in that case that vacatur is an "extraordinary remedy" to which a party must show an "equitable entitlement." *Id.*, 513 US at 26. Moreover, as the Supreme Court further observed in *Bonner Mall*, any choice regarding the application of vacatur must "take account of the public interest. 'Judicial precedents are presumptively correct and valuable to the legal community as a whole.'" *Id.* (citations omitted).

■  Here, OCA's failure to submit enough signatures to have Initiative Petition 16 placed on the ballot dissolved the underlying constitutional conflict between the parties. That

event, however, did not occur until after the Court of Appeals had rendered its decision. In short, this is not a situation in which the Court of Appeals ought not to have rendered a decision on the merits.

Mootness in this case did not result from any unilateral act by the Secretary of State. However, the issue before us is whether we should vacate the decision of the Court of Appeals to prevent inequity or unfairness to the Secretary of State. Several facts militate against requiring vacatur here. First, the unreviewed decision of the Court of Appeals does not preclude the Secretary of State from prospectively executing his official duties in accordance with the views he espoused here regarding the "full text" provision of Article IV, section 1(2)(d). In the future, the Secretary of State may do so and may elect either to defend that view in response to litigation that other parties might file, as he did here, or he may initiate a proceeding, such as a request for a declaratory judgment under ORS 28.020, seeking clarification of his duties under the constitution.[2] A denial of vacatur in this instance will neither inhibit the Secretary of State from administering his office as he sees fit nor require him to acquiesce in a constitutional interpretation with which he does not agree.

Second, the Secretary of State raised no objection to the award of attorney fees below and has never contended that that award preserved the justiciability of the underlying dispute. As noted above, we do not address the propriety of the attorney fees award here, because that issue is not before us. Therefore, under the circumstances, the award of attorney fees is not a factor that renders the denial of vacatur inequitable.

In summary, no unfairness or inequity results from denying vacatur here. We acknowledge that mootness has undermined the Secretary of State's opportunity to obtain

---

[2] ORS 28.020 provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

review of the Court of Appeals decision in this case. However, the practical consequences of that decision for the Secretary of State are negligible, and we have before us no objection or argument concerning the propriety or legal effect of the attorney fees award. Consequently, the Secretary of State has not demonstrated an equitable entitlement to the remedy of vacatur regarding the Court of Appeals decision.

The petition for review is dismissed as moot.