Argued and submitted March 20, affirmed June 14, petition for review denied
October 31, 2006 (341 Or 579)

# LEUPOLD & STEVENS, INC.,
*Petitioner,*

*and*

# Henry KANE,
*Intervenor-below,*

*v.*

# CITY OF BEAVERTON,
*Respondent.*

2005-073; A131242

138 P3d 23

Robert Van Brocklin argued the cause for petitioner. With him on the brief were Michelle Rudd and Stoel Rives LLP.

William J. Scheiderich argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.*

LANDAU, P. J.

---

* Schuman, J., *vice* Richardson, S. J.

## LANDAU, P. J.

The City of Beaverton (city) adopted an ordinance annexing property owned by petitioner Leupold & Stevens, Inc., without petitioner's consent. Petitioner appealed the ordinance to the Land Use Board of Appeals (LUBA). In the meantime, the legislature enacted a statute pertaining to local government authority to annex certain properties without owner consent. Petitioner argued to LUBA that the new statute retroactively eliminated the city's authority to annex in this case. LUBA affirmed the ordinance on the merits and rejected petitioner's argument under the new statute on the ground that it was predicated on facts that petitioner had failed to put in evidence.

Petitioner now seeks judicial review, advancing two propositions. First, petitioner contends that LUBA's and the city's decisions have become moot by virtue of the enactment of the new statute. Second, petitioner contends that LUBA erred on the merits.

We conclude that, on the record before us, there is no basis for concluding that the matter has become moot. We further conclude that LUBA did not err in affirming the city's annexation ordinance and therefore affirm.

## I.  FACTUAL BACKGROUND

The relevant facts are not in dispute. Petitioner owns several lots that are part of a larger territory that is surrounded by the city. One of the lots is "Lot 700," which is zoned for industrial uses, is improved with a building, and has a value in excess of $7 million.

On February 14, 2005, the city adopted a resolution to initiate annexation of petitioner's lots, including Lot 700. The city proposed to annex the lots pursuant to ORS 222.750—often referred to as the "island annexation" law—which provides that, when unincorporated land is surrounded by the corporate boundaries of a city, the city may annex the land "with or without the consent of any owner of property within the territory."

Petitioner objected to the annexation. As pertinent to the issues before us, petitioner argued that, notwithstanding ORS 222.750, the city lacked authority to annex Lot 700. According to petitioner, under Oregon Laws 1987, chapter 737, section 3, which is compiled as a note before ORS 222.111, notwithstanding any other provision of law, a city may not annex property without the owner's permission when the property is not residential, is zoned for industrial use, has "sewer and water lines" that were "paid for and installed by the property owner," and has an assessed valuation in excess of $7 million. Petitioner offered evidence of the current use and zoning of Lot 700, of its valuation, and—most significantly for the purposes of this case—of the fact that it had installed sewer and water lines at its own expense. Included in the expenditures was $25,890 spent in 1995 to relocate a 21-inch public sewer pipe to accommodate an expansion of the building on the lot.

The city found that petitioner's evidence was inadequate to demonstrate that Lot 700 qualified under section 3 of the 1987 law. In particular, the city found that petitioner had failed to demonstrate that it "installed" its own "sewer and water lines." According to the city, the statutory term "sewer and water lines" includes only the large, shared, public lines that deliver water to individual properties and collect waste from those properties. The term does not include, the city explained, "lateral" pipes that merely connect individual buildings with those larger, shared lines. In this case, the city found, the pipes that petitioner installed were almost entirely of the lateral type.

The city acknowledged that petitioner did expend $25,890 to relocate a 21-inch public sewer line. It nevertheless concluded that even that expenditure did not suffice, because the statute applies only when the property owner "installs" such pipe, not when it merely moves it to accomplish an expansion of development. In this case, the city contended, the pipe actually had been installed at public expense in 1987 to replace an existing, inadequate 10-inch pipe. Petitioner merely moved the location of the pipe southward so that petitioner could expand one of its buildings into an area where the 21-inch pipe originally had been located.

On May 2, 2005, the city adopted an ordinance annexing Lot 700. Petitioner appealed to LUBA. It argued that, among other things, the city erred in finding that petitioner had not demonstrated the factual predicates to the statutory exception to the city's annexation authority stated in section 3 of the 1987 law.

While the appeal was pending before LUBA, the legislature enacted a statute that alters the authority of cities to annex unincorporated property. The legislation was signed into law on September 2, 2005, and took effect immediately. Portions of the new law apply to all annexations approved under the "island annexation" statute, ORS 222.750, on or after March 1, 2005. Among the sections that apply retroactively is section 6, which provides that

"[a]n area of land within the urban growth boundary of the metropolitan service district established in the Portland metropolitan area may not be annexed under ORS 222.750 if:

"(1) The area of land is larger than seven acres and is zoned for industrial use;

"(2) The land is owned by an Oregon-based business entity that has been in continuous operation, either directly or through a predecessor, for at least 60 years; and

"(3) The business entity employs more than 500 individuals on the land."

Or Laws 2005, ch 844, § 6.

On November 17, 2005, the parties argued the appeal before LUBA. During argument, petitioner contended for the first time that the recently enacted statute precluded the city's annexation in this case. In support of its contention, petitioner submitted an affidavit that purported to establish each of the factual predicates set out in section 6 of the 2005 law. The city objected, contested the evidence, and argued that LUBA could not consider it in the absence of an evidentiary hearing. Petitioner did not respond to the objection and did not ask for an evidentiary hearing.

LUBA declined to address the applicability of the new law. LUBA noted that the applicability of the new law

depends on facts the existence of which petitioner attempted to establish by evidence that was not in the record before it. LUBA noted that petitioner had not responded to the city's objections to the affidavit that petitioner had submitted and that petitioner had not explained how the evidence properly could be considered for the first time on appeal. *See generally* ORS 197.835(2)(a) (LUBA reviews land use decisions on the record of the local proceedings).

On the merits, LUBA concluded that the city was correct in interpreting section 3 of the 1987 statute to apply only when there is proof that a property owner installed shared, public water and sewer lines, not lateral lines. After concluding that the 1987 statute does not apply to lateral sewer lines, LUBA proceeded to discuss whether petitioner's expenditure of $25,890 nevertheless triggered that statute. LUBA concluded that the city was correct in interpreting the statute to apply only to the initial installation of such lines, not their mere relocation.

## II. ANALYSIS

On review, petitioner argues both that the 2005 statute applies retroactively to this case and that, in any event, LUBA erred in concluding that the 1987 exception to the city's island annexation authority does not apply. We consider each argument in turn.

### A. *The applicability of the 2005 statute*

Petitioner argues that the 2005 statute applies retroactively and precludes the city's annexation in this case. Petitioner does not actually assign error to LUBA's decision as to the applicability of the 2005 statute. Instead, it advances the argument as one of "mootness," apparently in an effort to avoid the problem that LUBA described as the lack of any evidentiary basis for petitioner's argument in the record before it. According to petitioner, under ORAP 8.45, a party is not constrained by the evidence in the record if it becomes aware of additional facts that probably render a matter moot.

Petitioner's argument is clever, but unavailing. ORAP 8.45 does provide that "when a party becomes aware of facts that probably render[ ] an appeal moot, that party shall

provide notice of the facts to the court and to the other party or parties to the appeal, and may file a motion to dismiss the appeal." The key is that the facts of which the party becomes aware probably render an appeal "moot."

■ "Mootness" is a term of art concerning the authority of the courts to exercise the judicial power conferred by Article VII of the Oregon Constitution. *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). It is an aspect of justiciability, *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004), that applies only to the courts and not to local governments or administrative agencies, *Just v. City of Lebanon*, 193 Or App 132, 142, 88 P3d 312, *rev allowed*, 337 Or 247 (2004).

■■ In *Yancy*, the Supreme Court explained that, under the Oregon Constitution, a controversy is justiciable when "there is an actual and substantial controversy between parties having adverse interests." 337 Or at 349. A case becomes "moot" when there is no longer such a substantial controversy; that is, the court's exercise of authority would no longer "have some practical effect on the rights of the parties to the controversy." *Id.* The remedy for mootness is dismissal and, in some cases, vacatur of a lower court's decision. *See generally Kerr v. Bradbury*, 340 Or 241, 131 P3d 737 (2006).

■ Justiciability is sometimes confused with the merits of a controversy. As we noted in *Liberty Northwest Ins. v. Oregon Ins. Guarantee*, 206 Or App 102, 108, 136 P3d 49 (2006), parties may not avoid such requirements as preservation and the creation of a proper record by recasting a contest over the merits of a case as a controversy over justiciability.

In this case, petitioner's arguments about the applicability of the 2005 statute concern the merits of its case, not justiciability. Petitioner is not contending that, because of the legislature's enactment of the 2005 statute, there no longer is a controversy between it and the city as to the city's authority to annex its property. To the contrary, petitioner's argument is that, because of the legislature's enactment of the 2005 statute, it should prevail on the merits of that controversy.

Because the evidence that petitioner asks us to consider pertains not to the issue of justiciability but to the merits of its dispute with the city, it is not evidence that we may consider under ORAP 8.45. Judicial review of a decision of LUBA is not the proper place to sort out disputed issues of evidentiary fact. That is what hearings before the city—and, under certain circumstances, *see* ORS 197.835(2)(b); OAR 661-010-0045, before LUBA—are for.

Because the applicability of section 6 of the 2005 statute depends on the existence of certain predicate facts that cannot be demonstrated on the record before us, we decline to consider further petitioner's contention that this case is disposed of by that statute.

B.  *The applicability of the 1987 statute*

Petitioner argues that LUBA erred in concluding that section 3 of the 1987 statute does not preclude the city from exercising its authority under the island annexation statute to annex petitioner's property without consent. According to petitioner, the city erred in concluding that petitioner had not demonstrated that it had "sewer and water lines paid for and installed by the property owner." The city argues that LUBA correctly applied the law as to each issue.

1.  *"Sewer and water lines"*

We begin with LUBA's determination that the city correctly construed section 3 of the 1987 statute, which applies when the property to be annexed "[h]as sewer and water lines paid for and installed by the property owner." Petitioner argues that the statute is broadly worded and applies to *any* sewer and water lines, whether they are shared, public lines or private, lateral lines connecting a development to the shared lines. The city argues that it is commonly understood that statutory references to "sewer and water lines" describe only the large, shared, public lines that are ordinarily paid for by public entities.

The issue is one of statutory construction, which we resolve by reference to familiar principles described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with an examination of the text in context and, if necessary, consult legislative history and

other aids to construction. *Id.* In examining the text in context, we assume that, in the absence of evidence to the contrary, the legislature intended that the words of the statute be given their ordinary meaning. *Id.* at 611; *see also Haynes v. Tri-County Metro.*, 337 Or 659, 663, 103 P3d 101 (2004). When the legislature employs terms that have come to be regarded as "terms of art," however, we assume that the legislature intended the statute to be given that specialized meaning. *See, e.g., Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005).

In this case, petitioner contends that we should construe the term broadly and in accordance with its "plain" meaning. That is, the term "sewer and water lines," being unqualified, must be taken to refer to *any* sewer and water lines.

The legislature did not define the term in the statute. In ordinary parlance, the term "sewer" can refer to "a ditch or surface drain" or "an artificial usu. subterranean conduit to carry off water and waste matter (as surface water from rainfall, household waste from sinks or baths, or waste water from industrial works)." *Webster's Third New Int'l Dictionary* 2081 (unabridged ed 2002). And the word "line" commonly means "piping for conveying a fluid (as steam, gas, water, oil) from one location to another * * * ‹ installed new sewage ~ ›." *Id.* at 1314. Thus, in the abstract at least, the statutory reference to "sewer or water lines" could refer broadly to any sort of piping that conveys water or sewage.

A cursory examination of the case law that existed prior to the enactment of the statute, however, suggests that the term long has been commonly understood to have a narrower meaning. *See Weber and Weber*, 337 Or 55, 67, 91 P3d 706 (2004) ("[T]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes."); *Fresk v. Kraemer*, 337 Or 513, 520-21, 99 P3d 282 (2004) ("Statutory context includes other provisions of the same statute and other related statutes, as well as the preexisting common law and the statutory framework within which the statute was enacted.").

Under the case law, the universe of subterranean conduits that are used to convey sewage is divided up into two parts. First, there are "sewer lines," which refer to the larger, public "trunks" or "interceptors" that serve multiple users. Second, there are "lateral" lines or "laterals," which refer to the smaller lines that connect individual properties with the public "sewer lines."

Thus, for example, the Supreme Court in *Rogers v. Harden*, 274 Or 429, 547 P2d 114 (1976), resolved a dispute over who was obligated to pay for the "cost of road & utility improvements" on a particular parcel of property. The parties disputed whether the governing agreement referred to the costs of the main "sewer line" or included as well the "cost of the laterals to the property line from the main sewer and water lines." *Id.* at 431. The court concluded that the obligation included the cost of laterals, based on testimony about the customary practice as to the construction of main "sewer lines" and "laterals." *Id.* at 432.

Similarly, in *Davison v. Parker*, 50 Or App 129, 132, 622 P2d 1113, *rev den*, 290 Or 853 (1981), the defendant employed contractors to install large-diameter "sewer lines" and smaller, four-inch "lateral lines" or "laterals." *See also Byers et al. v. Hardy et al.*, 216 Or 42, 44, 337 P2d 806 (1959) (referring to a worker who "cut the sewer main and connect[ed] the lateral line to the house"); *Columbia Fishermen's Union v. St. Helens*, 160 Or 654, 657, 87 P2d 195 (1939) (referring to "a sewage system consisting of trunk and lateral sewers"); *Seaside, City of, v. Randles*, 92 Or 650, 665-66, 180 P 319 (1919) (referring throughout to "laterals" as distinct from the "main sewer"); *Rogers v. City of Salem*, 61 Or 321, 340, 122 P 308 (1912) ("Under some statutes, the cost of a main or trunk sewer which is intended to connect with lateral sewers and thus drain a wide area must be assessed upon all the property drained by the laterals."); *Trueblood v. Health Division*, 28 Or App 433, 436, 559 P2d 931 (1977) (drawing distinction between an "interceptor line to be built from the existing treatment plant to the neighborhood" and "lateral lines linking each home to the interceptor"); *Accident Prev. Div. v. Stadeli Pump*, 18 Or App 357, 361, 525 P2d 170 (1974) (referring to the "installation of a main-line or trunk sewer, and a network of lateral lines").

That same distinction between "sewer lines" or "trunks" or "mains" on the one hand and "laterals" on the other is reflected in statutes, as well. ORS 224.140, for example, refers to the authority to manage "sewers, ditches, canals and other works" and then adds that cities "may construct extensions, laterals and branches to such sewer system." ORS 371.605(3)(f), which concerns improvement of streets and roads in unincorporated areas, defines "improvement" to include "extending or repairing lateral sewers, street mains, sewage disposal systems or similar facilities." ORS 450.825 similarly refers to the authority of sanitary districts concerning "sewage disposal and drainage systems, future sewage treatment plants, including connecting trunk and lateral sewers." ORS 450.830 likewise refers to the construction and maintenance of "sewage disposal and drainage systems, including sewage treatment plants, trunk and lateral sewers and drains." ORS chapter 450, in fact, describes sewage disposal and drainage systems repeatedly as consisting of three parts: "treatment plants, trunk and lateral sewers and drains." *See generally* ORS 450.850 - 450.905.

■ It thus appears clear that, in the context of cases and statutes pertaining to sewers and sewage systems, references to sewer "lines," "trunks," or "mains" commonly refer to the large shared pipes that connect a treatment plant with smaller, private "laterals." In that light, LUBA appears correct in concluding that the legislature most likely intended that the reference in section 3 of the 1987 statute to "sewer and water lines" to refer to "lines," "trunks," or "mains" and not to the smaller, private "laterals."

That conclusion only makes sense. If the legislature intended the reference to "sewer and water lines" to mean *any* pipes that carry sewage or water, then the reach of the 1987 statute limiting city annexation authority would have no limit. Indeed, we do not understand why, if petitioner's proposed construction of the statute were correct, the statute would not apply to a property owner's payment for and installation of sinks, toilets, and piping that are purely internal to the building that sits on the property. We find it highly unlikely that the legislature intended that.

2. *"Installed by the property owner"*

■      There remains the question whether the $25,890 that petitioner spent on the relocation of the larger 21-inch shared line—which the parties apparently agree was not a lateral line—nevertheless satisfies the requirement of section 3 of the 1987 statute that the property has sewer and water lines "paid for and installed by the property owner." LUBA concluded that the city correctly interpreted the statute to refer only to *initial* installations of sewer lines, and not to relocations of existing lines.

Ordinary meaning favors LUBA's and the city's reading of the statute. The term "install" usually means "to introduce and establish (oneself or another) in an indicated place, condition, or status" and "to set up for use or service." *Webster's* at 1171. A great number of statutes employ the term, and so far as we can tell, in each case, it refers to initial construction or setup, as opposed to alteration, renovation, or relocation. *See, e.g.*, ORS 426.502(3) (to "construct" a mental health facility means to "install" as well as to "replace or relocate" it); ORS 454.655(1) (permit required to "install" a subsurface sewage disposal system, but not to repair or replace broken components); ORS 457.170(5) (authority of urban renewal agency to "install, construct, or reconstruct streets, utilities and site improvements").

In this case, petitioner did not "install" the 21-inch pipe in any usual sense. As we have noted, the record shows that the pipe was installed at public expense in 1987. Petitioner merely *moved* it southward to make room for a building expansion.

We therefore conclude that LUBA did not err in affirming the city's ordinance annexing petitioner's property pursuant to the city's authority under ORS 222.750. As LUBA correctly determined, petitioner did not establish the predicates for the application of section 3 of the 1987 statute that otherwise would preclude the city from exercising its authority under the island annexation statute.

Affirmed.