Argued and submitted September 5, 2007, petition and cross-petition
dismissed March 19, 2008

## THUNDERBIRD HOTELS, LLC,
*Respondent*
*Cross-Petitioner,*

*v.*

## CITY OF PORTLAND,
*Petitioner*
*Cross-Respondent.*

## JANTZEN DYNAMIC CORPORATION,
*Respondent,*

*v.*

## CITY OF PORTLAND,
*Petitioner.*

Land Use Board of Appeals
2006186, 2006187; A136212

180 P3d 87

Kathryn S. Beaumont, Senior Deputy City Attorney, argued the cause and filed the briefs for petitioner-cross-respondent.

Roger A. Alfred argued the cause for respondent-cross-petitioner. With him on the brief was Perkins Coie LLP.

Steven W. Abel argued the cause for respondent Jantzen Dynamic Corporation. With him on the brief were Elaine R. Albrich and Stoel Rives LLP.

Before Landau, Presiding Judge, and Armstrong and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

The City of Portland adopted an ordinance imposing a six-month moratorium on new development in commercial (CG) and industrial (IG2) zones on Hayden Island. *See* ORS 197.505 to 197.540 (setting out requirements for adoption by cities, counties, and special districts of moratoria on construction or development). Thunderbird Hotels, LLC, and Jantzen Dynamic Corporation, the owners of, respectively, a hotel and a shopping center on Hayden Island, appealed the ordinance to the Land Use Board of Appeals (LUBA). LUBA rejected several of Thunderbird's and Jantzen's assignments of error but sustained one and, on the latter basis, issued an order invalidating the ordinance. The city now petitions for judicial review, arguing that its adoption of an amendment to the moratorium before LUBA issued its decision rendered any controversy moot and that, in any event, the moratorium was not deficient in the manner determined by LUBA. Thunderbird cross-petitions, arguing that LUBA erred in determining that the moratorium was not deficient in other respects. For the reasons discussed below, we dismiss the petition and cross-petition as moot.

We take the relevant facts from LUBA's order and the record. Hayden Island is situated in the Columbia River and is part of the City of Portland. As noted, Thunderbird owns a hotel and Jantzen owns a shopping center on the island; both properties are located on land zoned CG. The I-5 freeway provides the only connection between the island and, respectively, Portland to the south and Vancouver, Washington, to the north. There is a single on and off ramp in each direction.

The Portland City Council determined that there existed a shortage of capacity in Hayden Island's transportation facilities, including freeway ramps, the freeway itself, and surface streets. Accordingly, it proposed to adopt Ordinance No. 180475, declaring a moratorium on development in commercial and industrial areas of the island based on the "shortage of transportation facilities" thereon. The ordinance set out numerous findings relating to transportation issues affecting Hayden Island and also set out six types of land use-related actions that were exempt from the moratorium; in

particular, the fourth exemption pertained to applications for specified kinds of permits "for work on an existing building." Finally, the ordinance set an expiration date of six months from the date of adoption, unless the city council extended the moratorium.

On October 4, 2006, the city held a public hearing, at which Thunderbird submitted comments in opposition to the ordinance and Jantzen submitted comments and evidence. Jantzen also submitted a proposed amendment to the moratorium's fourth exemption. Jantzen proposed that that exemption, which applied to applications for specified kinds of permits for work on "existing" buildings, so long as use of the building after completion of the work would not cause a net increase in vehicle trips during weekday morning and evening "peak" travel times, also apply to "replacement" buildings.

The city council rejected Jantzen's proposed amendment and adopted the ordinance as proposed by the city. Thunderbird and Jantzen appealed the ordinance to LUBA, which consolidated the appeals.

Thunderbird argued to LUBA that the city failed to adopt sufficient findings under ORS 197.520(2) and that the findings that it did make were not supported by substantial evidence in the record. It also argued that the city failed to follow its own procedural requirements for legislative enactments. Jantzen made similar arguments. The city responded that the only applicable procedures are those set out in ORS 197.505 to 197.540—specifically, to provide notice to the Department of Land Conservation and Development (DLCD) before the final public hearing on the moratorium; to make written findings justifying the moratorium; and to hold a public hearing on the moratorium and the findings justifying it, as provided in ORS 197.520(1)—and that it complied with those procedures. The city also argued that its findings made pursuant to ORS 197.520(2) were sufficient.

While the appeal to LUBA was pending, the city extended the moratorium twice. The first extension was in effect from April 4 to July 6, 2007. The second extension was adopted on June 7, 2007, and extended the ordinance from July 6, 2007 to January 1, 2008. The second extension also

purported to amend the moratorium by broadening the fourth exemption to apply to "replacement" as well as "existing" buildings, as previously had been requested by Jantzen.

On June 22, 2007, LUBA invalidated the ordinance declaring the original moratorium. In its opinion and order, LUBA first explained the policy and purposes behind the moratorium statutes:

> "ORS 197.510 acknowledges that moratoria may have negative effects on property owners, housing, and economic development, and that therefore such decisions must be adopted under clear standards that document the need for the moratorium and ensure that the impacts of the moratorium are minimized. In general, under ORS 197.520(2), a local government must demonstrate the need for the moratorium by showing that without the moratorium, new land development will cause public facility capacity to be exceeded. In adopting a moratorium, a local government must establish how severely capacity will be exceeded, limit the area affected by the moratorium, and fairly allocate any remaining capacity. ORS 197.520(2)."

On the merits, LUBA rejected Thunderbird and Jantzen's argument that, in adopting the ordinance, the city was required, and failed, to follow procedures set out in the Portland City Code (PCC) and in statutes other than ORS 197.510 to 197.540; LUBA concluded that the city was required to comply only with the latter statutes. As to the city's findings, LUBA concluded that the city adequately identified the public facilities on which the need for the moratorium was based, namely, the freeway and "internal transportation facilities" on Hayden Island; that it adequately described the estimated capacity of the transportation facilities on the island and identified the facilities that are currently operating beyond capacity; and that it adequately described the transportation needs expected to result from new development on the island. ORS 197.520(2)(a). LUBA also determined that the city's findings were adequate to demonstrate that the moratorium is reasonably limited to the area of the city—Hayden Island—where a shortage of key public facilities would otherwise occur. ORS 197.520(2)(b).

LUBA agreed, however, with Jantzen's argument that the city failed to make findings adequate to demonstrate that "the housing and economic development needs of the area affected have been accommodated as much as possible in any program for allocating any remaining public facility capacity," as required under ORS 197.520(2)(c). LUBA noted the city's argument that the moratorium did not, in fact, adopt a "program for allocating any remaining [transportation] capacity" because, according to the city, capacity had already been exceeded and there was therefore no remaining capacity to allocate.

LUBA also noted Jantzen's response that the six exemptions that were set out in the ordinance, in effect, constituted a program of allocation of capacity. LUBA explained that the moratorium generally exempted development on land zoned residential and that the first three "specific" exemptions allowed development to continue on building permit and land use review applications that had been submitted prior to the effective date of the moratorium; LUBA concluded that, on this record, those kinds of development would require additional capacity that was not available because capacity had already been exceeded. LUBA explained that, in contrast, the fourth exemption allowed redevelopment of an existing building only if the redevelopment did not require additional transportation capacity. LUBA concluded that the various exemptions thus "make clear" that the city perceived that some capacity existed for certain types of development and that the exemptions constituted, in essence, an allocation of that capacity.

LUBA further concluded that the city had failed to comply with the mandate of ORS 197.520(2)(c) that it demonstrate, through findings, that "the housing and economic development needs of the area affected [by the moratorium] have been accommodated as much as possible in any program for allocating any remaining public facility capacity." LUBA reasoned that the city's position that there was no transportation capacity to allocate was inconsistent with the city's general exemption for residential development and some of its specific exemptions for other kinds of development. It further reasoned that, where some exemptions

allowed development that would exacerbate existing transportation shortages and other exemptions did not, that constituted, "in essence," a program to allocate capacity.

Finally, LUBA concluded that Jantzen's proposed amendment to the fourth exemption was in the latter category—it pertained to economic development that would not exacerbate existing shortages—and that the city was obliged to make findings demonstrating why rejecting Jantzen's proposed amendment to that exemption was not inconsistent with the statutory mandate to accommodate economic development "as much as possible." Based on its determination that the city failed to comply with that mandate, LUBA invalidated the ordinance. *See* ORS 197.540(2) (if LUBA determines that a moratorium was not adopted in compliance with ORS 197.505 to 197.540, it shall invalidate the ordinance).

On judicial review of LUBA's order, the city first argues that the parties' dispute is moot. The city asks us to take judicial notice under OEC 201(d) of the ordinance that went into effect on June 7, 2007, which purported to extend the moratorium until January 1, 2008, and to amend the moratorium by making the fourth exemption also applicable to "replacement buildings." According to the city, that amendment remedied the only defect in the moratorium that was identified by LUBA; moreover, it did so before LUBA issued its final order. The city therefore urges us to vacate LUBA's order.

Thunderbird and Jantzen argue that, for several reasons, the controversy is not moot. Thunderbird first argues that, in the absence of a statute conferring it, the city lacked authority to amend the ordinance while appeal was pending before LUBA. It argues that, although ORS 197.530 authorized the city to extend the moratorium, it did not authorize it to *amend* it in substance; to conclude otherwise, it argues, would permit the city to make an end run around the substantive and procedural requirements for adopting a moratorium. Thunderbird argues that, for those reasons, the purported amendment is void and, being void, cannot render judicial review of the unamended moratorium moot. To similar effect, Jantzen argues that, where ORS 197.540(2)

requires LUBA to invalidate in its totality a moratorium that does not comply with ORS 197.505 to 197.540 in some respect and, conversely, does not permit LUBA to remand a moratorium for correction of defects, this court should conclude that the city lacked authority to correct a defect while appeal was pending before LUBA—a remedy that Jantzen likens to a remand.

Thunderbird additionally argues that, where LUBA invalidated the original moratorium, that decision also necessarily invalidated all extensions of it, which also militates against mootness by reason of such extensions. Thunderbird also argues that the case is not moot because, regardless of whether the fourth exemption complied with ORS 197.520(2), the underlying moratorium on development persists and the existence of that moratorium constitutes the dispute between the parties; Jantzen agrees, noting, moreover, that, for that reason, it need not have appealed the amended moratorium.

Thunderbird next argues that the case is not moot because it has cross-petitioned for judicial review, challenging the moratorium on grounds other than whether the fourth exemption violates ORS 197.520(2)(c)—grounds not affected by the city's purported amendment. And, assuming that the city was authorized to amend the moratorium in regard to the fourth exemption, Thunderbird and Jantzen argue that LUBA has not yet determined whether that amendment satisfies ORS 197.520(2)(c); accordingly, the dispute is not moot for that reason either. Finally, relying on *Kerr v. Bradbury*, 340 Or 241, 131 P3d 737 (2006), Thunderbird and Jantzen argue that, even assuming that the city's amendment of the fourth exemption renders this case moot before this court, LUBA's decision should not be vacated.

Since the parties made the described arguments relating to mootness, one further complication has arisen. Following oral argument, the city requested that this court take judicial notice of yet another—the third and, by statute, final—extension of the moratorium. Under the ordinance purporting to effectuate that extension, which the city adopted on November 28, 2007, the moratorium will expire

on July 1, 2008. The city also notes that Thunderbird and Jantzen have appealed that third extension to LUBA. In response to the city's request, Thunderbird argues that, where the second extension on which the city relied for its mootness argument, has now expired and the third extension contains the same defects as the second extension, this judicial review proceeding is not moot for that reason as well.

■        In *Leupold & Stevens, Inc. v. City of Beaverton*, 206 Or App 368, 138 P3d 23, *rev den*, 341 Or 579 (2006), this court explained that "mootness" is a term of art concerning the authority of the courts to exercise the judicial power conferred by Article VII (Amended) of the Oregon Constitution and that, as an aspect of justiciability, it applies only to the courts and not to local governments or administrative agencies. *Id.* at 374 (citing *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004), and *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993)). We further explained that, under the Oregon Constitution, a controversy is justiciable when "there is an actual and substantial controversy between parties having adverse interests" and that a case becomes "moot" when there is no longer such a substantial controversy, that is, when the court's exercise of authority would no longer "have some practical effect on the rights of the parties to the controversy." 206 Or App at 374 (quoting *Yancy*, 337 Or at 349 (internal quotation marks omitted)). The remedy for mootness is dismissal and, in some cases, vacatur of a lower court's decision. 206 Or App at 374 (citing *Kerr*, 340 Or at 241).

        Consistently with those principles, we note, as an initial matter, that it is doubtful that the purported amendment of the moratorium at the time of its second extension would have rendered the appeal before LUBA moot in its entirety. Although that amendment ostensibly satisfied Jantzen's concerns under ORS 197.520(2)(c), Thunderbird and Jantzen also raised other challenges to the moratorium, namely, the sufficiency of the city's findings under ORS 197.520(2)(a) and (b).

■        In any event, it is not the task of this court to determine whether Jantzen's assignment of error based on ORS 197.520(2)(c) was moot for purposes of LUBA's review at the

time that LUBA decided it; rather, that is a matter for LUBA to determine. *See Just v. City of Lebanon (A122517)*, 193 Or App 132, 137-47, 88 P3d 312 (2004), *rev dismissed*, 342 Or 117 (2006) (constitutional justiciability principles that are applicable to courts, including principles relating to mootness and standing, do not apply to LUBA; when LUBA dismisses an appeal on mootness grounds, it does so pursuant to statutory provisions relating to its own decision-making authority). Accordingly, even assuming that the issue whether the city complied with ORS 197.520(2)(c) is now moot for purposes of judicial review by this court, we would decline to vacate LUBA's order on that basis.

■     We also note that, ordinarily, when one of several issues on judicial review is moot, that fact will not divest this court of jurisdiction to consider other issues in the case. Again, in this case, the city asserts that the issue of the moratorium's validity under ORS 197.520(2)(c) is moot; however, Thunderbird has cross-petitioned for review of LUBA's determination that the city's findings were not insufficient under ORS 197.520(2)(a) and (b).

■■ .   With those general principles in mind, we return to the question whether, as the city argues, the parties' dispute regarding ORS 197.520(2)(c) is moot for purposes of our judicial review by reason of the city's purported amendment of the relevant portion of the moratorium. We properly begin that inquiry with the question whether, in the first instance, the city was authorized to amend the moratorium as an adjunct to extending it.

The city's authority pertaining to moratoria derives from statute. Accordingly, whether it was authorized to amend the moratorium as an adjunct to extending it is a question of statutory interpretation that we resolve under the principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text of the relevant statutes. ORS 197.520 sets out substantive and procedural requirements for the adoption of moratoria; it provides, in part:

"(1)   No city, county or special district may adopt a moratorium on construction or land development unless it first:

"(a)    Provides written notice to the Department of Land Conservation and Development at least 45 days prior to the final public hearing to be held to consider the adoption of the moratorium;

"(b)    Makes written findings justifying the need for the moratorium in the manner provided for in this section; and

"(c)    Holds a public hearing on the adoption of the moratorium and the findings which support the moratorium.

"(2)    For urban or urbanizable land, a moratorium may be justified by demonstration of a need to prevent a shortage of public facilities which would otherwise occur during the effective period of the moratorium. Such a demonstration shall be based upon reasonably available information, and shall include, but need not be limited to, findings:

"(a)    Showing the extent of need beyond the estimated capacity of existing public facilities expected to result from new land development, including identification of any public facilities currently operating beyond capacity, and the portion of such capacity already committed to development;

"(b)    That the moratorium is reasonably limited to those areas of the city, county or special district where a shortage of key public facilities would otherwise occur; and

"(c)    That the housing and economic development needs of the area affected have been accommodated as much as possible in any program for allocating any remaining public facility capacity."

Thus, ORS 197.520(1) imposes specific procedural requirements for adoption of moratoria, including the requirement that the local government provide notice to the DLCD 45 days before the final hearing on a proposed moratorium; that it set out written findings justifying the moratorium; and that it hold a public hearing on the moratorium *and* on the findings supporting it. Those procedural requirements suggest that the legislature did not intend for local governments to be authorized to amend a moratorium during its effective period without providing notice to DLCD and an opportunity for the public to be heard on such amendments.

We next consider whether the statutes authorizing local governments to extend moratoria provide authority to amend them during that process. ORS 197.530 provides:

"(1)   A city, county or special district that adopts a moratorium on construction or land development in conformity with ORS 197.520(1) and (2) shall within 60 days after the effective date of the moratorium adopt a program to correct the problem creating the moratorium. The program shall be presented at a public hearing. The city, county or special district shall give at least 14 days' advance notice to the Department of Land Conservation and Development of the time and date of the public hearing.

"(2)   No moratorium adopted under ORS 197.520(2) shall be effective for a period longer than six months from the date on which the corrective program is adopted, but such a moratorium may be extended provided the city, county or special district adopting the moratorium holds a public hearing on the proposed extension and adopts written findings that:

"(a)   Verify that the problem giving rise to the moratorium still exists;

"(b)   Demonstrate that reasonable progress is being made to alleviate the problem giving rise to the moratorium; and

"(c)   Set a specific duration for the renewal of the moratorium.

"(3)   No single extension under subsection (2) of this section may be for a period longer than six months, and no moratorium shall be extended more than three times.

"(4)   Any city, county or special district considering an extension of a moratorium shall give the department at least 14 days' notice of the time and date of the public hearing on the extension."

ORS 197.530 provides several relevant clues. Most significantly, under ORS 197.530(2), a "moratorium adopted under ORS 197.520(2)"—that is, a moratorium that meets the general requirements set out in ORS 197.520(1), that is applicable to "urban or urbanizable land," and that is based on a "shortage of public facilities"—shall remain in effect no longer than six months, but "such a moratorium" may be extended. The phrase "such a moratorium" clearly refers to a "moratorium adopted under ORS 197.520(2)," as do the references in paragraphs (a), (b), and (c) to "the moratorium." *See Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931

P2d 763 (1997) (definite article "the" functions as an adjective that denotes a particular, specified thing); *Rose v. SAIF*, 200 Or App 654, 663, 116 P3d 913 (2005) (use of definite article makes clear that statutory reference to item is reference to same item that is mentioned earlier in same statute). That wording suggests that a local government may extend the *same* moratorium; by negative implication, it suggests that the local government is not authorized to extend a moratorium that is, in substance, different from the one that was adopted. Stated another way, where ORS 197.530(2) in effect refers to extending the same moratorium as was originally adopted and does not expressly provide in any way for amending or modifying a moratorium when extending it, to read ORS 197.530(2) to authorize such amendment would amount to inserting language into that provision that simply is not there.

■　　In addition, ORS 197.530(1) requires a local government that has adopted a moratorium also to adopt, within 60 days, a "program to correct the problem creating the moratorium." That program has its own procedural requirements: It must be presented at a public hearing and the local government must give notice to DLCD at least 14 days before that hearing. Thus, subsection (1) of ORS 197.530 also indicates that the adoption of moratoria and related events are subject to specific procedural requirements and that, accordingly, the legislature did not intend to authorize a local government to adopt an amendment to a moratorium in a manner that did not involve those procedural steps.

■　　Other statutes in ORS chapter 197 pertaining to moratoria also support that understanding. ORS 197.510 sets out the legislature's findings pertaining to moratoria. As pertinent here, it provides that, although moratoria may have a negative effect on property owners and on "the housing and economic development policies and goals of other local governments," such moratoria may nevertheless be "necessary and desirable." ORS 197.510(1), (2). The statute further provides that "[c]lear state standards should be established to ensure" that, among other things, "[t]he need for moratoria is *considered and documented.*" ORS 197.510(3)(a) (emphasis added). That context is consistent with our understanding that, because the amendment

adopted here did not comply with the procedural requirements for adopting moratoria in the first instance, it was not authorized. *See also* ORS 197.540(2) (if LUBA determines that moratorium or corrective program "was not adopted in compliance with the provisions of ORS 197.505 to 197.540," LUBA shall issue an order invalidating the moratorium).

■    ORS 197.524 is to similar effect; it provides that, when a local government engages in a pattern or practice of delaying or stopping the issuance of permits for development, it shall adopt a moratorium under ORS 197.505 to 197.540. Thus, ORS 197.524 suggests that, although a local government is authorized to delay or stop development, it may not do so in an *ad hoc* manner or without following the express procedures and requirements for moratoria. The action of amending a previously adopted moratorium without following those mandates is similar in kind, if not necessarily in degree, to the type of *ad hoc* action that is disfavored in ORS 197.524.

Based on the text and context of ORS 197.520 and ORS 197.530, we conclude that the city was not authorized to amend the moratorium as an adjunct to extending it pursuant to ORS 197.520 and ORS 197.530. It follows that the purported second and third extensions of the moratorium—the substantive validity of which are not before us and which we expressly do not decide—failed, as a matter of both fact and law, to constitute lawful extensions of the moratorium originally declared by Ordinance No. 180475. From that fact, it also unavoidably follows that the original moratorium expired on the expiration date of its first and only lawful extension, that is, on July 6, 2007.

■    Finally, because the moratorium that is the subject of our judicial review expired on that date, it necessarily follows that the exercise of our judicial review function in regard to that moratorium would have no practical effect on the rights of the parties to this proceeding. Specifically, no practical effect would result from our determining whether LUBA erred in concluding that the original moratorium's fourth exemption violated ORS 197.520(2)(c) and in concluding that the exemptions in the original moratorium constituted a program to allocate remaining transportation capacity within the meaning of ORS 197.520(2)(c). Nor would any

practical effect flow from a determination by this court regarding whether LUBA erred in failing to address Thunderbird's countervailing contentions—that the original moratorium was not adopted to prevent a shortage of public facilities that would otherwise occur during the moratorium period and that the city failed to show that the moratorium was necessary to prevent such a shortage, as required under ORS 197.520(2).

In sum, not merely the parties' dispute under ORS 197.520(2)(c), but this entire proceeding, is moot. We therefore dismiss the petition and cross-petition.

Petition and cross-petition dismissed.