Argued and submitted May 31, 2018, affirmed August 26, 2020

STATE ex rel SELECT REFORM COMMITTEE
OF JEFFERSON,
Bob Burns, Chief Petitioner;
Stan Neal, Chief Petitioner; and
Brad Cheney, Chief Petitioner,
*Relators-Appellants,*

*v.*

CITY OF JEFFERSON,
an Oregon municipal corporation;
and Sarah Cook, City's Elections Officer,
*Defendants-Respondents,*

*and*

HAMBY FAMILY LIMITED PARTNERSHIP,
an Oregon limited partnership,
*Intervenor-Respondent.*

Marion County Circuit Court
16CV28441; A164282

474 P3d 399

The city council of the City of Jefferson enacted an ordinance that annexed property into the city. Relator Select Reform Committee of Jefferson petitioned the city to issue a ballot title for a referendum on the annexation. The city refused, and relator petitioned for a writ of mandamus to compel the city and its elections officer to issue the ballot title. In this appeal from a judgment dismissing the alternative writ of mandamus, relator argues that the trial court erred by granting the city's motion to dismiss. The city asserts that this appeal is moot for two reasons: (1) because the ordinance annexing the property has been repealed; and (2) because the city has amended its charter provision governing annexations. On the merits, the city also argues that the trial court did not err in granting the motion because the city did not act legislatively when it annexed the property as required by ORS 222.127. *Held*: The trial court did not err in granting the motion to dismiss. With respect to mootness, because the trial court designated a prevailing party and awarded attorney fees and costs, the appeal is not moot because the correctness of the court's decision is at issue on appeal, and, if the court erred, the prevailing party designation and award of attorney fees would necessarily be reversed. With respect to the motion to dismiss, the trial court did not err in granting the motion because, the city acted administratively by complying with ORS 222.127, and, thus, there was no constitutional requirement to refer the annexation decision to the electorate.

Affirmed.

Sean E. Armstrong, Judge.

David E. Coulombe argued the cause for appellants. Also on the brief was Fewel, Brewer & Coulombe.

Ross M. Williamson argued the cause for respondents City of Jefferson and Sarah Cook. Also on the brief was Speer Hoyt LLC.

No appearance for respondent Hamby Family Limited Partnership.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Affirmed.

_____

* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

The city council of the City of Jefferson enacted an ordinance that annexed property into the city. Relator Select Reform Committee of Jefferson petitioned the city to issue a ballot title for a referendum on the annexation. The city refused, and relator petitioned for a writ of mandamus to compel the city and its elections officer to issue the ballot title.[1] In this appeal from a judgment dismissing the alternative writ of mandamus, relator argues that the trial court erred by granting the city's motion to dismiss. The city asserts that this appeal is moot for two reasons: (1) because the ordinance annexing the property has been repealed; and (2) because the city has amended its charter provision governing annexations. As discussed below, we conclude that this appeal is not moot and that the trial court correctly dismissed the alternative writ. Therefore, we affirm.

                              BACKGROUND

The facts are procedural and undisputed. Intervenor, the Hamby Family Limited Partnership, applied to have roughly 14 acres of property annexed into the City of Jefferson.[2] The property was adjacent to the then-existing city boundaries. After a public hearing, the city council approved the application in the form of an ordinance, Ordinance 695. The city did not refer the annexation decision to the voters.

Relator filed a prospective petition to initiate a referendum on the annexation decision. The city rejected the petition, declining to create a ballot title for a referendum because, it concluded, the ordinance "was an administrative action and quasi-judicial land use decision; the ordinance was not a legislative act of the City Council." As a result, in the city's view, the ordinance was not subject to a referendum under Article IV, section 1(5), of the Oregon Constitution, which reserves to "the qualified voters of each municipality and district" certain "initiative and referendum powers" "as

---

[1] Throughout this opinion, we refer to both the city and its elections officer as the city.

[2] The Hamby Family Limited Partnership has not filed a brief on appeal. In recounting the proceedings below, we refer to the city and the Hamby Family Limited Partnership jointly as defendants.

to all local, special, and municipal legislation of every character in or for their municipality or district."³ In the city's view, the ordinance was not legislative, so it was not subject to a referendum under Article IV, section 1(5).

Relator then filed a petition for an alternative writ of mandamus in Marion County Circuit Court to direct the city to issue the ballot title and hold a referendum. The court issued the alternative writ. The city and intervenor both moved to dismiss, arguing that the annexation decision was not subject to a referendum because it was not a legislative action.

Before the trial court, the parties agreed that Article IV, section 1(5) was the controlling law and that, under that provision, the city was not required to accept relator's referendum petition if the challenged ordinance was administrative or quasi-judicial rather than legislative. They disagreed, however, about whether the ordinance was legislative. Defendants argued that the ordinance was not legislative because the action that the city took in the ordinance—annexing the property without first holding a referendum—was required by Senate Bill 1573 (2016), which was later codified as ORS 222.127. As relevant here, that statute provides:

"(1)   This section applies to a city whose laws require a petition proposing annexation of territory to be submitted to the electors of the city.

"(2)   Notwithstanding a contrary provision of the city charter or a city ordinance, upon receipt of a petition proposing annexation of territory submitted by all owners of land in the territory, the legislative body of the city shall annex the territory without submitting the proposal to the electors of the city if:

---

³ Article IV, section 1(5), of the Oregon Constitution, provides, in full:

"The initiative and referendum powers reserved to the people by subsections (2) and (3) of this section are further reserved to the qualified voters of each municipality and district as to all local, special, and municipal legislation of every character in or for their municipality or district. The manner of exercising those powers shall be provided by general laws, but cities may provide for the manner of exercising those powers as to their municipal legislation. In a city, not more than 15 percent of the qualified voters may be required to propose legislation by the initiative, and not more than 10 percent of the qualified voters may be required to order a referendum on legislation."

"(a)   The territory is included within an urban growth boundary adopted by the city or Metro, as defined in ORS 197.015;

"(b)   The territory is, or upon annexation of the territory into the city will be, subject to the acknowledged comprehensive plan of the city;

"(c)   At least one lot or parcel within the territory is contiguous to the city limits or is separated from the city limits only by a public right of way or a body of water; and

"(d)   The proposal conforms to all other requirements of the city's ordinances.

"*  *  *  *  *

"(4)   When the legislative body of the city determines that the criteria described in subsection (2) of this section apply to territory proposed for annexation, the legislative body may declare that the territory described in subsections (2) and (3) of this section is annexed to the city by an ordinance that contains a description of the territory annexed."

Defendants contended that, under that statute, the city's role in approving the annexation had two parts, and neither was legislative. First, the city's role was quasi-judicial, as it had to determine whether the statute's requirements, which incorporate the "requirements of the city's ordinances," were satisfied. ORS 222.127(2)(d). Second, its role was administrative, because the statute required the city, after determining that the requirements were satisfied, to "annex the territory without submitting the proposal to the electors of the city." ORS 222.127(2) ("[T]he legislative body of the city shall annex the territory without submitting the proposal to the electors of the city."). Defendants contended that the city's actions were not legislative because the legislature had already made all the necessary legislative judgments; all that remained for the city to do was to apply the statutory requirements to ascertain whether annexation was the single legally correct outcome and, if it was, to annex the property.

Defendants also pointed out that the Jefferson City Charter appeared to allow for annexation without a vote of the electors when the annexation is "mandated by state

law." Jefferson City Charter, ch I, § 3 ("Unless mandated by state law, annexation *** to the City of Jefferson, may only be approved by a prior majority vote among the electorate."). Thus, they contended, there was no conflict between ORS 222.127 and city law; once the requirements of ORS 222.127(2) were met, ORS 222.127 mandated annexation, and the city code allowed for annexation without a vote in that circumstance.

Relator responded that, by enacting the ordinance annexing property without sending the decision to the voters, the city had done more than simply implement ORS 222.127. It argued that, by complying with that state statute, the city had effectively amended its charter and its development code, both of which, in relator's view, required voters' approval of annexation decisions. Relator contended that those "amendments" meant that the ordinance was a legislative action, because it changed the law of the city.

Relator also argued that the city's decision to comply with ORS 222.127 was, itself, a legislative decision that was embodied in the ordinance, because, before applying the statute, the city had debated whether to refuse to apply ORS 222.127 and, instead, join a legal challenge to its constitutionality.

Relator expressly did not challenge the constitutionality of ORS 222.127. Relator's counsel told the court that "the constitutionality of Senate Bill 1573" was "not what we're here for today." Instead, "[w]hat we're about today is do the people—do the electorate have a right, a constitutional right [under Article IV, section 1(5)], to refer for a referendum to challenge that ordinance." That is, as we understand it, relator's position was that, even assuming that ORS 222.127 is constitutional and otherwise valid, the city's action was nevertheless legislative under Article IV, section 1(5), because its decision to follow valid state law was a legislative amendment of local law.

The trial court rejected all of relator's arguments. It concluded that the city's action was administrative because ORS 222.127 required the city to annex the property without a vote and the charter expressly excepted such a situation from the voting requirement. The court entered a

general judgment of dismissal on January 27, 2017. In June 2017, the court entered a supplemental judgment in which it determined that defendants were the prevailing parties and, based on that conclusion, awarded attorney fees. *See* ORS 34.210(2) (providing that, in a mandamus action, a "court in its discretion may designate a prevailing party and award attorney fees, costs and disbursements to the prevailing party"). Relator appeals from the general judgment; it has not filed a notice of appeal as to the supplemental judgment.

While this mandamus action was pending in the trial court, relator also appealed the city's land use decision to the Land Use Board of Appeals (LUBA). In an opinion issued in February 2017, LUBA concluded that the city had not adequately explained how the proposed annexation satisfied several requirements of the city's ordinances and, consequently, remanded the city's decision. On remand from LUBA, in September 2017, the city repealed Ordinance 695. It reenacted a similar provision in Ordinance 702.

## MOOTNESS

The city then moved to dismiss this appeal as moot, contending that, after the repeal of Ordinance 695, any decision of this court would have no practical effect on the rights of the parties. *See Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993) (noting that one of the requirements "for a justiciable controversy is that the court's decision in the matter will have some practical effect on the rights of the parties to the controversy"). The appellate commissioner denied the motion, noting that an appeal is not moot when the trial court has awarded attorney fees based on its decision on the merits, as is the case here. *2606 Building v. MICA OR I Inc.*, 334 Or 175, 179 n 2, 47 P3d 12 (2002); *see also* ORS 20.220(3) (providing that, when a party appeals from a judgment to which an award of attorney fees and costs relates, the party need not appeal from the supplemental judgment awarding fees and costs; rather, if the appellate court reverses the primary judgment, the supplemental judgment is also reversed).

In its brief, the city renews its argument that the appeal is moot. The city now contends that, "[t]o bring the

supplemental judgment within this court's appellate juris-
diction, Relator should have filed a notice of appeal within
30 days of the supplemental judgment's entry." Because of
that failure to appeal the supplemental judgment, the city
argues, this case is controlled by *Kerr v. Bradbury*, 340 Or
241, 131 P3d 737, *adh'd to on recons*, 341 Or 200, 140 P3d
1131 (2006). In *Kerr*, the Supreme Court declined to consider
whether an otherwise moot dispute was rendered justicia-
ble by an award of attorney fees in the Court of Appeals,
in an order separate from the opinion, when that order was
not challenged in the Supreme Court. 340 Or at 244-45. In
this case, the city argues, because relator did not appeal the
supplemental judgment awarding attorney fees, the award
is likewise outside the scope of our consideration of whether
this appeal is moot.

As the appellate commissioner held, ORS 20.220(3)
resolves this issue in favor of justiciability. Because the
attorney-fee award in *Kerr* did not implicate that statute,
the court's holding there does not affect this case. ORS
20.220(3) provides:

> "When an appeal is taken from a judgment under ORS
> 19.205 to which an award of attorney fees or costs and dis-
> bursements relates:
>
> "(a)  If the appellate court reverses the judgment, the
> award of attorney fees or costs and disbursements shall be
> deemed reversed; or
>
> "(b)  If the appellate court modifies the judgment such
> that the party who was awarded attorney fees or costs and
> disbursements is no longer entitled to the award, the party
> against whom attorney fees or costs and disbursements
> were awarded may move for relief under ORCP 71 B(1)(e)."

In light of that statute, our consideration of whether an
appeal from "a judgment under ORS 19.205" is moot always
may include the effect of a supplemental judgment award-
ing attorney fees. If we reverse the general judgment, the
attorney fee award in the supplemental judgment will also
be reversed by operation of law; there is no need to appeal
the supplemental judgment to obtain that relief. *See Cyberco
Holdings, Inc. v. Con-Way Transportation*, 212 Or App 576,
595, 159 P3d 359, *rev den*, 343 Or 366 (2007) (reversing an

award of attorney fees pursuant to ORS 20.220(3) because the breach of contract claim on which the attorney fee award was predicated was reversed); *see also ZRZ Realty Co. v. Beneficial Fire and Casualty Ins.*, 257 Or App 180, 186, 306 P3d 661, *rev den*, 354 Or 491 (2013) ("[T]he legal effect of reversing the underlying attorney fee award in the general judgment was to reverse the supplemental judgment for attorney fees as well, because that supplemental judgment was predicated on the initial award[.]"). Thus, a failure to separately appeal the supplemental judgment does not negate the fact that our decision will affect the rights of the parties by dictating whether the attorney-fee award will remain in effect.

The trial court's award of attorney fees prevents this appeal from being moot. The trial court awarded prevailing party attorney fees under ORS 34.210, which allows the court to award fees in mandamus actions "in its discretion." Because the trial court's decision on the merits, embodied in the general judgment, made the city the prevailing party, the attorney-fee award depends on the correctness of the trial court's decision on the merits. Consequently, our evaluation of the merits of the appeal has a practical effect on the rights of the parties; it will determine whether the trial court's award of attorney fees will remain in effect.

The city also contends that this appeal is moot because it has amended its charter. For the same reason explained above with regard to the repeal of Ordinance 695, this appeal has not been mooted by the charter amendment: If the trial court's evaluation of the merits was incorrect, the attorney-fee award will not remain in effect. Thus, we proceed to consider the merits of the dispute.

## ARTICLE IV, SECTION 1(5)

In a mandamus action, we review the trial court's legal conclusions for errors of law. *State ex rel Curry v. Thompson*, 156 Or App 537, 541, 967 P2d 522 (1998), *rev den*, 328 Or 365 (1999). In this case, the facts are undisputed, and, as noted above, the parties agreed that the facts alleged in the alternative writ were sufficient for the court to determine whether the ordinance was legislative within the meaning of Article IV, section 1(5).

"The crucial test, for determining that which is legislative and that which is administrative, is whether the ordinance was one making a law or one executing a law already in existence[.]" *Monahan v. Funk*, 137 Or 580, 585, 3 P2d 778 (1931); *see also, e.g.*, *Roberts v. Thies*, 70 Or App 256, 259-61, 689 P2d 356 (1984), *rev den*, 298 Or 553 (1985) (where there was prior municipal legislation—land use plans—that authorized development of a park in a certain neighborhood, the challenged ordinance, which authorized acquisition of property for the park, "only executes the law which already existed").

On appeal, the parties largely renew the arguments that they made before the trial court. Relator again contends that the city's action was legislative because, by following ORS 222.127 rather than referring the annexation decision to the electors, the city effectively amended its charter and its development code. It argues that case law establishes that an ordinance changing the boundaries of a city is necessarily a legislative act by the city. In its second assignment of error, relator raises another related argument that is based on the same view of the city's action: It contends that the trial court erred by considering whether, in enacting Ordinance 695, the city was complying with ORS 222.127. In its view, the city's action was legislative because it changed city law, and that that is true regardless of whether the action was required by ORS 222.127.

In another part of its second assignment of error, relator also appears to contend that ORS 222.127 violates Article IV, section 1(5). As explained above, however, relator expressly did not make that argument in the trial court; its counsel told the court that the statute's constitutionality was "not what we're here for today." Accordingly, we do not consider that argument on appeal. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (explaining that an issue not raised before the trial court generally will not be considered on appeal); *State v. Chavez*, 335 Or 44, 48, 56 P3d 923 (2002) (applying *Wyatt* to hold that, where a party affirmatively tells the trial court it is not pursuing a specific argument, that argument is not preserved for appellate review).

As we understand relator's preserved arguments, they depend on the proposition that a city retains independent power to act legislatively—to make law by taking a given action—even when the legislature has validly required the city to take that action. That is, in relator's view, even if a valid state law required the city to annex the property, the city still had independent power—that was then subject to a referendum—to decide whether to take that action. Relator, however, has cited no authority that establishes that proposition, and we are aware of none.

Moreover, that view is not compatible with our understanding of the relationship between state and local law. As a general matter, with exceptions that are not directly at issue here, state law controls over conflicting local law: "[W]hen a local enactment is found incompatible with a state law in an area of substantive policy, the state law will displace the local rule."[4] *LaGrande/Astoria v. PERB*, 281 Or 137, 149, 576 P2d 1204, *adh'd to on recons*, 284 Or 173, 586 P2d 765 (1978); *see also State v. Port of Astoria*, 79 Or 1, 19, 154 P 399 (1916) ("Extramural authority *** is not available to the legal voters of cities and towns, unless the right to exercise it has first been granted either by a general law enacted by the legislature or by legislation initiated by the people of the whole state."). The court explained: "With respect to a state law, or action taken under it, *** it is elementary that the legislature has plenary authority except for such limits as may be found in the constitution or in federal law." *LaGrande/Astoria*, 281 Or at 142. When incompatibility exists, the state law displaces the local law automatically, as a legal matter; no local action is necessary to implement the displacement. *See, e.g., id.* at 149 (when incompatibility exists, "the state law will displace the local rule"); *City of Corvallis v. Pi Kappa Phi*, 293 Or App 319,

---

[4] As explained above, because relator expressly did not challenge the constitutionality of ORS 222.127 in the trial court, we do not address its argument on that subject on appeal. Thus, our discussion of the relationship between state and local law is general and, like relator's argument below, assumes that ORS 222.127 is constitutional and valid. In our analysis in general and in this textual discussion of the relationship between state and local law in particular, we express no opinion about the nature of ORS 222.127 or its constitutionality. *See generally City of Corvallis v. State of Oregon*, 304 Or App 171, 464 P3d 1127 (2020) (rejecting various constitutional challenges to ORS 222.127).

331, 428 P3d 905 (2018) ("[W]e conclude that the ordinance conflicts with the state criminal laws and is, therefore, preempted."); *Thunderbird Mobile Club v. City of Wilsonville*, 234 Or App 457, 479, 228 P3d 650, *rev den*, 348 Or 524 (2010) ("We conclude that the trial court erred in determining that the city's ordinances were preempted or otherwise displaced by state law.").

With that understanding, we disagree with relator that, if ORS 222.127 required the city to annex the property, the city could have been acting legislatively by annexing the property as required. In that circumstance, the city was compelled to annex the property without a vote; it was merely "executing a law already in existence"—a law enacted by the legislature. *Monahan*, 137 Or at 585; *see also City of Corvallis v. State of Oregon*, 304 Or App 171, 188, 464 P3d 1127 (2020) (noting that annexation under ORS 222.127 is "mandatory, so long as the conditions are met"). To the extent that the annexation can fairly be characterized as an "amendment" to the city's charter and development code, it was the legislature that effected the amendment, not the city.

The case law that relator cites to establish that a change of a city's boundaries is legislative establishes that very proposition: "[C]hanging the boundaries of a city is an exercise of legislative authority, whether that authority is exercised by the legislature or the city." *City of Damascus v. Brown*, 266 Or App 416, 440, 337 P3d 1019 (2014). In this case, the legislature exercised legislative authority over the annexation by requiring that, once certain requirements are met, a city "shall" annex the property without a vote. ORS 222.127(2). The city must ascertain whether the requirements are met; if they are, it must act administratively to effectuate the existing law, which the legislature has made.

For the same reason, the trial court did not err in considering whether ORS 222.127 required the city to annex the property. If the statute required the annexation, then it automatically displaced local law to the contrary, replacing it with the substance of the statute. The city was then obliged to comply with the statute.

As noted above, ORS 222.127(2) provides:

> "Notwithstanding a contrary provision of the city charter or a city ordinance, upon receipt of a petition proposing annexation of territory submitted by all owners of land in the territory, the legislative body of the city shall annex the territory without submitting the proposal to the electors of the city if [certain enumerated requirements are met]."

That provision explicitly displaces local law that contradicts it. *See Severy v. Board of Parole*, 318 Or 172, 178, 864 P2d 368 (1993) (explaining that the "function of the 'notwithstanding' clause *** [is] to make the statute an exception to the provisions of law referenced in the clause"). Relator suggests no alternative understanding of the text. Accordingly, we conclude that ORS 222.127 displaced any provisions to the contrary in the Jefferson City Charter and development code.[5] Consequently, the city did not act legislatively when it annexed the property as required by ORS 222.127; it merely applied the governing law.

In sum, Ordinance 695 was not "local, special [or] municipal legislation" within the meaning of Article IV, section 1(5). Accordingly, the city was not required to issue a ballot title for a referendum on it, and the trial court did not err in dismissing the alternative writ.

Affirmed.

---

[5]  Because ORS 222.127 displaces any local provision to the contrary, we need not, and do not, consider whether the Jefferson City Code allowed annexation without a vote.