Argued and submitted December 20, 2018; general judgment reversed to extent it sets aside "the Orders imposing the 2016 ESA" and requires "the ESA amounts paid by Petitioners [to] be refunded," supplemental judgment reversed, remanded for further proceedings consistent with this opinion October 7, 2020

CENTRAL LINCOLN PEOPLE'S UTILITY DISTRICT,
a municipal corporation;
City of Hermiston, dba Hermiston Energy Services,
a municipal corporation;
Clatskanie People's Utility District,
a municipal corporation;
Columbia River People's Utility District,
a municipal corporation;
Consumers Power, Inc.,
an Oregon cooperative corporation;
Emerald People's Utility District,
a municipal corporation;
Eugene Water & Electric Board,
a municipal corporation;
Northern Wasco People's Utility District,
a municipal corporation;
Tillamook People's Utility District,
a municipal corporation; and
Umatilla Electric Cooperative,
an Oregon cooperative corporation,
*Plaintiffs-Respondents,*
*v.*

OREGON DEPARTMENT OF ENERGY,
an agency of the State of Oregon;
and Janine Benner, in her official capacity as
the Director of the Oregon Department of Energy,
*Defendants-Appellants.*

Marion County Circuit Court
16CV18269; A165881

478 P3d 993

This appeal relates to challenges that petitioners filed in the trial court, pursuant to ORS 183.484, against orders that the director of the Oregon Department of Energy (ODOE) issued in 2016. Each of the challenged orders required one of the petitioners to pay an energy supplier assessment (ESA) to help fund programs of ODOE and the Energy Facility Siting Council (council). On cross-motions for summary judgment, the trial court agreed with petitioners that the ESA is a tax, and the court entered a judgment including a declaration to that

effect. The court also agreed with petitioners that, during the process leading up to the enactment of the 2015 legislation that required issuance of the challenged 2016 ESA orders, ODOE had not complied with certain process requirements set out in ORS 469.421(8)(b). As a remedy for that violation, the court set aside the 2016 ESA orders. The court also entered a supplemental judgment awarding petitioners attorney fees pursuant to ORS 183.497(1)(b) based on its determination that ODOE had acted without a reasonable basis in fact or in law. ODOE appeals. *Held*: Even assuming, without deciding, that ODOE did not meet the requirements of ORS 469.421(8)(b), the trial court erred when it set aside the 2016 ESA orders. The court also erred when it denied the part of ODOE's cross-motion for summary judgment in which ODOE argued that the 2016 ESA orders should not be set aside even if ODOE had failed to comply with ORS 469.421(8)(b). Additionally, the question of whether the ESA is a tax is moot on appeal, and, under the circumstances presented by this case, the Court of Appeals declined to exercise any discretion that it may have to address that moot point.

General judgment reversed to the extent that it sets aside "the Orders imposing the 2016 ESA" and requires "the ESA amounts paid by Petitioners [to] be refunded." Supplemental judgment reversed. Remanded for further proceedings consistent with this opinion.

Tracy A. Prall, Judge.

Michael A. Casper, Assistant Attorney General, argued the cause for appellants. Also on the briefs were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Chris Perdue, Assistant Attorney General.

Brad S. Daniels argued the cause for respondents. Also on the brief were Eric J. Kodesch, Samantha K. Sondag, and Stoel Rives LLP.

Before DeHoog, Presiding Judge, and Aoyagi, Judge, and Hadlock, Judge pro tempore.

HADLOCK, J. pro tempore.

General judgment reversed to extent it sets aside "the Orders imposing the 2016 ESA" and requires "the ESA amounts paid by Petitioners [to] be refunded." Supplemental judgment reversed. Remanded for further proceedings consistent with this opinion.

## HADLOCK, J. pro tempore

This appeal relates to challenges that petitioners filed in the trial court, pursuant to ORS 183.484, against orders that the director of the Oregon Department of Energy (ODOE) issued in 2016. Each of the challenged orders required one of the petitioners to pay an energy supplier assessment (ESA) to help fund programs of ODOE and the Energy Facility Siting Council (council). On cross-motions for summary judgment, the trial court agreed with petitioners that the ESA is a tax, and the court entered a judgment including a declaration to that effect. The court also agreed with petitioners that, during the process leading up to the enactment of the 2015 legislation that required issuance of the challenged 2016 ESA orders, ODOE[1] had not complied with certain process requirements set out in ORS 469.421 (8)(b). As a remedy for that violation, the court set aside the 2016 ESA orders. The court also awarded petitioners attorney fees pursuant to ORS 183.497(1)(b) based on its determination that ODOE had acted without a reasonable basis in fact or in law. ODOE appeals.

As explained below, we conclude that—even assuming, without deciding, that ODOE did not meet the requirements of ORS 469.421(8)(b)—the trial court erred when it set aside the 2016 ESA orders. We also conclude that the question of whether the ESA is a tax is moot on appeal, and, under the circumstances presented by this case, we decline to exercise any discretion we may have to address that moot point. Finally, we reverse the trial court's award of attorney fees.

## I. BACKGROUND: THE ESA AND THE ODOE BUDGET PROCESS

### A. *The Requirements of ORS 469.421(8)(b) and (c)*

For many years, energy resource suppliers in Oregon (including electric and natural-gas utilities) have been subject to annual assessments—the ESAs—that help fund programs and activities of ODOE and the council. *See*

---

[1] Here and elsewhere in this opinion, except where context requires otherwise, we sometimes use the term "ODOE" to refer collectively to ODOE and its director.

ORS 469.421(8)(c) (describing assessments); ORS 469.421 (8)(i)(A) (defining "energy resource supplier"); *see generally* ORS 469.421(4) (1983) (setting out then-existing form of the assessments funding ODOE).[2] Each biennium, the

---

[2] ORS 469.421(8) provides, in pertinent part:

"(a) In addition to any other fees required by law, each energy resource supplier shall pay to the department annually its share of an assessment to fund the programs and activities of the council and the department.

"(b)  Prior to filing an agency request budget under ORS 291.208 for purposes related to the compilation and preparation of the Governor's budget under ORS 291.216, the director shall determine the projected aggregate amount of revenue to be collected from energy resource suppliers under this subsection that will be necessary to fund the programs and activities of the council and the department for each fiscal year of the upcoming biennium. After making that determination, the director shall convene a public meeting with representatives of energy resource suppliers and other interested parties for the purpose of providing energy resource suppliers with a full accounting of:

"(A) The projected revenue needed to fund each department program or activity; and

"(B) The projected allocation of moneys derived from the assessment imposed under this subsection to each department program or activity.

"(c) Upon approval of the budget authorization of the council and the department by an odd-numbered year regular session of the Legislative Assembly, the director shall promptly enter an order establishing the amount of revenues required to be derived from an assessment pursuant to this subsection in order to fund programs and activities that the council and the department are charged with administering and authorized to conduct under the laws of this state, including those enumerated in ORS 469.030, for the first fiscal year of the forthcoming biennium. On or before June 1 of each even-numbered year, the director shall enter an order establishing the amount of revenues required to be derived from an assessment pursuant to this subsection in order to fund the programs and activities that the council and the department are charged with administering and authorized to conduct under the laws of this state, including those enumerated in ORS 469.030, for the second fiscal year of the biennium. The order shall take into account any revisions to the biennial budget of the council and the department made by the Emergency Board meeting in an interim period or by the Legislative Assembly meeting in special session or in an even-numbered year regular session.

"(d) Each order issued by the director pursuant to paragraph (c) of this subsection shall allocate the aggregate assessment set forth in the order to energy resource suppliers in accordance with paragraph (e) of this subsection.

"* * * * *

"(k) Orders issued by the director pursuant to this section shall be subject to judicial review under ORS 183.484. * * *."

The legislature made a minor amendment to ORS 469.421(8) after the orders in this case issued. Or Laws 2016, ch 117, § 71. That amendment does not affect our analysis, and all references to the statute in this opinion are to the current version, unless stated otherwise.

ODOE director must issue orders assessing ESAs to energy resource suppliers after the legislature has approved budgets for ODOE and the council. ORS 469.421(8)(c). The director issues two sets of ESA orders, one for each fiscal year in the biennium. *Id*. Those orders are final agency orders in other than a contested case, subject to challenge under ORS 183.484. ORS 469.421(8)(k).

According to a joint stipulation of facts submitted in conjunction with the parties' cross-motions for summary judgment (and consistent with the legislative history we have been provided), "[b]efore and during the 2013 legislative session, legislators, energy resource suppliers, and other stakeholders became concerned about the budgeting process for the ESA, and wanted more transparency and stakeholder involvement in the process." Responsive legislation included the addition of a provision to ORS 469.421(8) requiring the ODOE director—with respect to each future biennium—to project the aggregate amount of ESAs that would be needed in the upcoming biennium and to "convene a public meeting with representatives of energy resource suppliers and other interested parties for the purpose of providing energy resource suppliers with a full accounting of" the "projected revenue needed to fund each [ODOE] program or activity" and the "projected allocation of moneys derived from [the ESAs] to each [ODOE] program or activity." ORS 469.421 (8)(b)(A), (B). The added provision requires the director to make those determinations before ODOE files its agency request budget for the upcoming biennium. ORS 469.421(8)(b).

B.   *Budgeting for the 2015-2017 Biennium*

In 2014, ODOE held four meetings in which it provided certain budget information to interested parties. At one of those meetings, an August 7, 2014, meeting of the Energy Advisory Work Group, ODOE personnel gave an overview of the department's agency request budget for 2015-2017. With respect to the ESA, ODOE projected expenditures of approximately $13.1 million for the 2015-2017 biennium. ODOE showed how those funds would be allocated between budgeting categories like "personal services" and "services and supplies." However, ODOE did not indicate how the ESA funds would be allocated to specific programs,

such as "Cool Schools" or "Resource Planning & Economics." Some additional information about the ESA budget was provided at that meeting and the other 2014 meetings, including how ESA funds had been spent on specific ODOE programs during the 2013-2015 biennium. ODOE asserts that the documentation it provided in conjunction with the 2014 meetings provided the "full accounting" that ORS 469.421 (8)(b) required. Petitioners disagree. In their view, because the documentation did not show how ESA funds would be spent during the *2015-2017* biennium, it did not provide the mandatory "full accounting."[3]

After ODOE submitted its agency request budget, the legislative process resulted in Senate Bill (SB) 5510 (2015), which approved ODOE's budget for the 2015-2017 biennium. That legislation specified the amount of "other funds" available to ODOE, including ESA funds, which a budget note indicated would be limited to $13.1 million— the amount that ODOE had specified in its agency request budget. In compliance with ORS 469.421(8)(c), ODOE subsequently issued the 2016 ESA orders that petitioners have challenged in this judicial review proceeding.[4] In aggregate, the 2016 ESA orders issued by ODOE total approximately half of the $13.1 million in ESA funds approved by SB 5510 for the 2015-2017 biennium.

## II.   THE JUDICIAL REVIEW PROCEEDING

Petitioners challenged the 2016 ESA orders issued to them by jointly filing a petition for judicial review in the trial court pursuant to ORS 183.484, a provision of the Administrative Procedures Act (APA). As pertinent here, petitioners asked the court to set aside the 2016 ESA orders because ODOE had not complied with the "full accounting" requirement of ORS 469.421(8)(b). Petitioners also sought "a declaration that the ESA is a 'tax' and accordingly must meet all constitutional requirements in order to be imposed," and they requested attorney fees under ORS 183.497.

---

[3] Because we ultimately determine that we need not resolve whether ODOE complied with ORS 469.421(8)(b) in conjunction with the 2014 meetings, we do not discuss the information provided at those meetings in any greater detail.

[4] With respect to ESA funds for the 2015-2017 biennium, the ODOE director also issued a set of ESA orders for the 2015 fiscal year, in accordance with ORS 469.421(8)(c). Those 2015 orders are not at issue in this case.

The parties filed cross-motions for summary judgment and, in conjunction with those motions, a joint stipulation of facts describing the history of the 2013 amendments to ORS 469.421(8)(b), the information provided at the 2014 meetings described above, and the process by which ODOE's budget was developed for the 2015-2017 biennium. Petitioners' summary judgment motion provided arguments in favor of the positions asserted in their petition for judicial review. They requested, among other things, that the court enter an order "setting aside the Orders imposing the 2016 ESA and requiring ODOE to refund the ESA amounts" that petitioners had paid. In response, ODOE argued, among other things, that it had complied with the requirements of ORS 469.421(8)(b), that the petitioners were not entitled to have the 2016 ESA orders set aside even if ODOE had not complied with ORS 469.421(8)(b), that the ESA is a fee (not a tax), and that it would not matter if the ESA were a tax because the statute creating the ESA originated as a bill in the House of Representatives—House Bill (HB) 2259 (1981)—and complied with all pertinent constitutional requirements.

After hearing argument, the trial court issued a letter opinion in which it granted petitioners' summary judgment motion in part and denied ODOE's cross-motion. The court agreed with petitioners that ODOE had not provided a "full accounting" of how ESA funds would be allocated to ODOE programs and activities, as ORS 469.421 (8)(b) requires. The court stated that ODOE's failure to comply with that requirement "deprived the representatives of energy resource suppliers and other interested parties of information the legislature intended them to have so that they could fully and effectively engage in the legislative process." Based on its view that no other remedy "would adequately address ODOE's failure," the court set aside the 2016 ESA orders, as petitioners had requested.

The letter opinion also expressed the trial court's agreement with petitioners that the ESA imposed by ORS 496.421(8) is a tax. In that regard, the court relied heavily on *Northwest Natural Gas Co. v. Frank*, 293 Or 374, 381-82, 648 P2d 1284 (1982), which held that the then-extant version of the ESA imposed a tax that was dedicated at least in part to

the Common School Fund under Article VIII, section 2(1)(g), of the Oregon Constitution because it was a tax measured by the sale of oil or natural gas.[5] However, the trial court also ruled that, because ORS 469.421(8) itself originated in the House of Representatives, imposition of that tax did not violate the constitutional requirements for bills raising revenue.[6] The court further ruled that SB 5510 (2015) was a budget bill that did not raise revenue, but merely authorized expenditures, so it was "not subject to Oregon constitutional requirements for bills raising revenue."

In accordance with those rulings on the cross-motions for summary judgment, the trial court entered a general judgment that includes these declarations and other provisions:

"1.   The [ESA] under ORS 469.421(8)(a) is a tax.

"2.   Senate Bill 5510 [(2015)] is not subject to the Oregon Constitution's requirements for bills raising revenue.

"3.   ODOE and [its director] did not follow statutory procedures: specifically, ODOE did not provide the full accounting required by ORS 469.421(8)(b). Pursuant to ORS 183.484, the Court finds that ODOE erroneously interpreted a provision of law and that a correct interpretation compels the Court to set aside the Orders imposing the 2016 ESA. Therefore, the ESA amounts paid by Petitioners shall be refunded."

The court subsequently entered a supplemental judgment ordering ODOE to pay petitioners' attorney fees pursuant to ORS 183.497(1)(b). That order was based on the court's determination that ODOE had acted without reasonable

---

[5] The version of the ESA addressed by the court in *Frank* was imposed pursuant to *former* ORS 469.420, which—as a legislatively mandated result of the court's holding—was repealed and replaced with ORS 469.421(8)(c). Or Laws 1981, ch 792, §§ 4, 5. *See Frank*, 293 Or at 383-84 (because the ESA as imposed by *former* ORS 469.420 was "a tax on energy resources sold," by operation of the 1981 legislation, "ORS 469.420 [was] repealed" and legislation later codified at ORS 469.421(8)(b) was "established in lieu thereof").

[6] The 1981 bill that resulted in repeal of *former* ORS 469.420 (following the decision in *Frank*) and enactment of ORS 469.421(8) originated in the House of Representatives, as House Bill (HB) 2259 (1981). *See* Or Laws 1981, ch 792 (so specifying). Legislation adding the "full accounting" requirement of ORS 469.421(8)(b) also originated in the House, as House Bill (HB) 2807 (2013). *See* Or Laws 2013, ch 656 (so specifying).

basis in fact or in law, both when it failed to comply with ORS 469.421(8)(b) and "when it insisted that the 2016 ESA was a fee not a tax."

### III.   THE PARTIES' ARGUMENTS ON APPEAL

ODOE raises three assignments of error on appeal. First, ODOE challenges the trial court's ruling on the parties' cross-motions for summary judgment, focusing on the trial court's decision to set aside the 2016 ESA orders based on the court's determination that ODOE did not comply with the "full accounting" requirement of ORS 469.421 (8)(b). ODOE argues both that it complied with the requirement and that, even if it did not comply, the trial court erred when it set aside the 2016 ESA orders as a remedy for that violation.

On the latter point, ODOE acknowledges that the 2016 ESA orders are orders in other than contested cases that may be challenged pursuant to ORS 183.484, as ORS 469.421(8)(k) itself provides. Nonetheless, ODOE contends that the legislature would not have intended a court to invalidate final ESA orders—orders that ODOE issued following the passage of legislation that required their issuance—as a remedy for a procedural failing that occurred earlier, before the pertinent legislative session. ODOE characterizes the provisions of ORS 469.421(8)(b) (which imposes the "full accounting" requirement as part of the budget process preceding legislative action) and ORS 469.421(8)(c) (which requires issuance of the ESA orders following legislative approval of ODOE's budget) as independent. ODOE concludes that "a procedural violation in the 2014 * * * process cannot be a sufficient basis to set aside the 2016 order for the simple reason that the 2016 order is not based on the 2014 [agency request budget]." Instead, ODOE argues, its director "has an independent statutory obligation to issue the challenged [ESA] order based on the budget bill that the legislature has ultimately adopted," regardless of "any flaws in procedure that may have led to the [agency request budget]." ODOE also argues that, if petitioners were dissatisfied with the information they received at the 2014 meetings, they should have taken action *then*—by complaining to the agency, by raising the issue through the political process,

or by seeking judicial intervention before the legislature enacted the budget bill.

In response, petitioners first assert that the court correctly determined that ODOE had not complied with the "full accounting" requirement of ORS 469.421(8)(b). In addition, petitioners argue that the court acted correctly in setting aside the 2016 ESA orders because ORS 183.484 authorizes that form of relief for an agency's "[f]ailure to follow statutorily required processes." Petitioners observe that the "full accounting" requirement of ORS 469.421(8)(b) is mandatory and argue that the legislature would not have intended to allow the agency to violate the statute without consequence. Moreover, petitioners argue, ODOE's duty to issue the ESA orders pursuant to ORS 469.421(8)(c) once the legislature approved the agency's budget "does not excuse its failure to comply with" the requirements of ORS 469.421 (8)(b). In response to ODOE's assertion that petitioners could have (and should have) expressed their dissatisfaction with the process before the ESA orders issued, petitioners contend that ODOE is impermissibly "attempt[ing] to shift blame for its failures"; petitioners argue that any ability they may have had to express dissatisfaction earlier in the process "has no legal relevance to the issues in dispute."[7]

In its second assignment of error, ODOE argues that the trial court erred in declaring that the ESA imposed pursuant to ORS 469.421(8)(a) is a tax. In that regard, ODOE argues that the question whether the ESA is a tax "was and is moot," and it asks us to vacate the trial court's declaration for that reason. As we understand ODOE's mootness argument, it contends that the question of whether the ESA is a tax could have a practical effect, in this context, only if the legislation that imposes the tax did not originate in the House of Representatives, as Article IV, section 18, of the Oregon Constitution requires of bills for raising revenue. Because the trial court determined that the revenue-raising aspect of the ESA did originate in the House,[8] the court

---

[7] Petitioners also assert that ODOE should be judicially estopped from arguing that petitioners cannot obtain relief under ORS 183.484 in this action because of arguments that ODOE made in prior litigation challenging ESA orders that it issued for the 2015 fiscal year. We reject that argument without discussion.

[8] *See* 307 Or App at 170 & n 6.

necessarily had to reject petitioners' contention that impo-sition of the ESA violated Article IV, section 18, regardless of whether, for purposes of that constitutional provision, the ESA is a tax. And, to the extent that petitioners disagree with the trial court's concomitant ruling that SB 5510 is not the revenue-raising aspect of the ESA, petitioners did not cross-appeal that aspect of the general judgment, so that issue is not properly before this court. In sum, according to ODOE, the question of whether the ESA is a tax is purely abstract, given the trial court's other rulings, and that question was moot before the trial court and also is moot on appeal. ODOE also argues on the merits that the ESA is not a tax.

In response, petitioners first contend that the "ESA as tax" question is not moot. Petitioners observe that energy resource suppliers "remain subject to the ESA" and they assert that the ESA's "status as a tax—including the atten-dant constitutional limitations—is meaningful." Petitioners also argue, on the merits, that the ESA is a tax.

Relatedly, petitioners cross-assign error to the trial court's declaration that SB 5510 was not a revenue-raising bill, asserting that a cross-assignment is sufficient to chal-lenge that ruling and a cross-appeal was not necessary.

ODOE's third assignment of error challenges the trial court's award of attorney fees. ODOE primarily argues that it acted with a reasonable basis in fact and in law, con-trary to the trial court's ruling. It also contends that the trial court should not have awarded petitioners fees on the "ESA as tax" issue because "[t]he tax status of the ESA was ultimately irrelevant to petitioners' failed challenge" to the ESA's constitutionality. Petitioners present contrary argu-ments on both points.

## IV.  ANALYSIS

A.  *The Trial Court's Decision to Set Aside the 2016 ESA Orders*

We begin with ODOE's challenge to the trial court's ruling on the cross-motions for summary judgment and, particularly, the court's decision to set aside the 2016 ESA

orders. For purposes of our analysis, we assume—without deciding—that the trial court ruled correctly when it determined that the information that ODOE provided energy suppliers in 2014 did not meet the "full accounting" requirement of ORS 469.421(8)(b). The question before us is whether that kind of failing authorized the trial court to set aside the 2016 ESA orders as a remedy in this proceeding.

In an "other than contested case" proceeding, the APA provides that a court may review a challenged order to determine whether: (1) "the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action"; (2) "the agency's exercise of discretion" is impermissible for certain specified reasons; or (3) the agency's order "is not supported by substantial evidence in the record." ORS 183.484(5). Here, petitioners have not asserted either that ODOE erroneously exercised its discretion or that the 2016 ESA orders are not supported by substantial evidence. Rather, their challenge to the 2016 ESA orders asserts that ODOE erroneously interpreted the law requiring it to provide a "full accounting" of how ESA funds would be allocated in the 2015-2017 biennium and that, as a result, ODOE did not fulfill its obligation to provide the accounting, which (in APA terms) is the "particular action" that ORS 469.421(8)(b) "compel[led]." ORS 183.484(5)(a). The question, then, is what actions the APA authorized the trial court to take if the court found (as it did) that ODOE had failed in the way that petitioners claimed.

Petitioners and the trial court found the answer to that question in ORS 183.484(5)(a), which provides:

> "The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:
>
> "(A)   *Set aside* or modify the order; or
>
> "(B)   Remand the case to the agency for further action under a correct interpretation of the provision of law."

(Emphasis added.)

Notwithstanding that judicial-review provision of the APA, ODOE challenges the trial court's authority to

set aside the 2016 ESA orders. ODOE argues that it was required to issue the ESA orders once the legislature passed SB 5510 in 2015, regardless of any procedural failures in the preceding budget process. Put differently, ODOE contends that the 2016 ESA orders are not based on the 2014 budget process and, therefore, the trial court could not set aside the orders as a remedy for any flaws in that process, including any failure to provide the required "full accounting." For the reasons that follow, we agree.

The APA provides the means by which "any person adversely affected or aggrieved by an order" may seek judicial review of that order. ORS 183.480(1). Judicial review is "of final orders" that agencies issue, ORS 183.480(2); with certain exceptions not pertinent here, the APA does not authorize courts to review agencies' actions more generally. Thus, judicial review of an order in other than a contested case necessarily must focus on the order itself. That is, the agency error that is the object of an ORS 183.484 petition for judicial review must be an error that is somehow reflected in the challenged order—either because the order is substantively flawed (for example, based on incorrect interpretation of substantive law) or because the order is the product of a flawed agency process (flawed because in violation of statute or an impermissible exercise of agency discretion). *See* ORS 183.484(5) (setting out bases on which court may set aside or remand an order).

An example of judicial review focusing on process may be found in *Canby Manor Estates, LLC v. ODOT*, 241 Or App 504, 251 P3d 214 (2011), on which petitioners rely here. *Canby Manor* related to the Oregon Department of Transportation's (ODOT's) order permitting construction of a highway median that would restrict turns into and out of the petitioner's property. *Id*. at 506. A statute mandated that property owners like the petitioner have an opportunity to participate in the ODOT permitting process for such road projects. *Id*. at 508. ODOT had not provided the petitioner with that opportunity, and that was a basis on which the petitioner challenged ODOT's order. *Id*. at 506-09. The trial court remanded the order to ODOT, and we affirmed, holding that ODOT's failure to give the petitioner the statutorily

mandated opportunity to participate in the permitting process justified the remand under ORS 183.484. *Id*. at 509.

The circumstances presented in this case differ significantly from those at issue in *Canby Manor*. The challenged order in *Canby Manor* was the direct product of a flawed agency process. That is, ODOT could not properly issue the order *at all*, given its failure to give the petitioner the required opportunity to participate in the process. Here, by contrast, a statute *mandated* that the ODOE director issue the 2016 ESA orders after the legislature passed SB 5510 (2015). ORS 469.421(8)(c).

Thus, the 2016 ESA orders cannot be said to be a product of ODOE's budget process in 2014 or of any deficiencies in that process.[9] Rather, the orders are a product of the 2015 legislature's approval of ODOE's budget by way of SB 5510, which triggered the director's mandatory duty to issue ESA orders imposing assessments in amounts based on the legislatively approved budget. ORS 469.421(8)(c). Any flaws in the process that preceded passage of SB 5510 did not mean that the ODOE director should not have issued the 2016 ESA orders; indeed, the director had no choice but to issue those orders. Accordingly, this case cannot properly be analogized to *Canby Manor*.

Under the circumstances present here, we conclude that any failure by ODOE to comply with the "full accounting" requirement of ORS 469.421(8)(b) in 2014 is not an error that is reflected in the 2016 ESA orders. The intervening action of the 2015 legislature—a separate branch of government—meant that the 2016 ESA orders *had to* issue without regard to any flaw in the preceding process. The orders therefore are not a product of the 2014 process and any failure by ODOE to provide energy supplies with a "full accounting" as part of that process is not a basis for setting aside the 2016 ESA orders.

In sum, the trial court erred when it granted petitioners' summary judgment motion in part, to the extent

---

[9] Petitioners' arguments relate solely to their argument that ODOE violated ORS 469.421(8)(b) in 2014 before SB 5510 passed; they have not asserted that anything that happened after the passage of that legislation was improper or would justify setting aside the 2016 ESA orders.

that the court set aside the 2016 ESA orders and required ODOE to refund the ESA amounts paid. It follows that the court also erred when it denied ODOE's cross-motion for summary judgment, to the extent that the motion was based on ODOE's argument that the court should not set aside the 2016 ESA orders even if ODOE had not complied with ORS 469.421(8)(b).

B.   *The "ESA is a Tax" Declaration*

We turn to the parties' dispute about whether the trial court erred in declaring that the ESA is a tax. When considering that question—and whether the question is moot—it is important to recall the context in which the dispute arose. In their petition for judicial review, petitioners did not simply seek an abstract declaration that the ESA is a tax. Rather, petitioners argued that SB 5510, which triggered issuance of the 2016 ESA orders, was a bill that imposed a tax (the ESA) and, therefore, was required to originate in the House under the "Origination Clause" of Article IV, section 18. Consistently with that assertion, petitioners' summary judgment motion asked the trial court to "declare that SB 5510 was a bill for raising revenue for purposes of the Oregon Constitution, and that its passage violated the Origination Clause."[10]

Article IV, section 18, on which petitioners' argument is based, provides:

"Bills may originate in either house, but may be amended, or rejected in the other; except that bills for raising revenue shall originate in the House of Representatives."

In *Bobo v. Kulongoski*, 338 Or 111, 122, 107 P3d 18 (2005), the Supreme Court set out a two-part test for determining when a bill is a "bill for raising revenue" that must originate in the House under Article IV, section 18:

"The first is whether the bill collects or brings money into the treasury. If it does not, that is the end of the inquiry.

---

[10] Petitioners also argued below that, in addition to originating in the House of Representatives, the legislation was required to pass with a three-fifths vote pursuant to Article IV, section 25, of the Oregon Constitution. However, petitioners have not raised any argument under section 25 on appeal, and we therefore do not refer to that provision further.

If a bill does bring money into the treasury, the remaining question is whether the bill possesses the essential features of a bill levying a tax."

*Bobo* is important here because it demonstrates that the question whether a bill imposes a "tax"—as petitioners claim is true of SB 5510—ultimately has practical significance for purposes of the Origination Clause only if the bill *also* collects or brings money into the treasury. *Id*. Thus, under *Bobo*, petitioners could prevail on their Origination Clause argument only if they established *both* that SB 5510 possessed the essential features of a bill levying a tax (or, as petitioners put it in shorthand, that the ESA is a tax) *and* that SB 5510 brought money into the treasury.

The trial court ruled against petitioners on the second point. In its view, SB 5510 was a budget bill that did not bring money into the treasury. The court also ruled that ORS 469.421(8)(a)—the statute that creates the ESA— "correctly originated in the House of Representatives as HB 2259 [(1981)] and the amended HB 2807 (2013)" and that the statute therefore "does not violate the Oregon constitutional requirements for bills raising revenue." That is, as ODOE puts it on appeal, the trial court concluded that "the law that authorized raising revenue through the ESA was not SB 5510, as petitioners argued, but rather the laws codified in ORS 469.421(8), which *had* originated in the House and the constitutionality of which was undisputed." As necessarily follows from the trial court's ruling that SB 5510 did not bring money into the treasury, the general judgment declares that SB 5510 "is not subject to the Oregon Constitution's requirements for bills raising revenue." Nonetheless, the judgment also declares that "[t]he [ESA] under ORS 469.421(8)(a) is a tax."

On appeal, ODOE argues that the trial court erred in declaring that the ESA "is a tax" because, once the court determined that SB 5510 did not bring money into the treasury, the question of whether the ESA is a tax became moot. We reject that argument for lack of preservation. Although ODOE made a mootness argument below in passing, it related to a different subject. ODOE has not pointed to anything in the record (and we have not found anything)

demonstrating that ODOE argued to the trial court that, once it determined that SB 5510 did not bring money into the treasury, the court should not go on to declare whether the ESA is a tax. And because the mootness of a "matter[] of public interest" does not, standing alone, deprive a court of power to rule on that issue, *Couey v. Atkins*, 357 Or 460, 520, 355 P3d 866 (2015), the question whether the trial court erred by ruling on a moot point is subject to preservation principles. Because ODOE did not argue below that the "ESA as tax" question was moot in light of the trial court's other rulings, we do not address further whether the trial court erred by addressing that question.

Nonetheless, under the circumstances present here, we decline to address whether, on the merits, the trial court erred when it declared that the ESA is a tax. As explained above, that declaration could have practical significance (at least, in the context of this case) only if the law that imposed the ESA brought money into the treasury *and* that law did not originate in the House. ODOE argued below, and the trial court agreed, that the law that imposed the ESA and brought money into the treasury is ORS 469.421(8)(a) itself, not SB 5510. The general judgment includes a declaration so stating: "Senate Bill 5510 *** is not subject to the Oregon Constitution's requirements for bills raising revenue."

Petitioners challenge that aspect of the judgment in their cross-assignment of error, asserting that the trial court erred when it declared "that SB 5510 was not a 'bill for raising revenue'" for purposes of the Origination Clause. But because petitioners seek modification and reversal of an express declaration in the *judgment*, a cross-appeal was needed to bring that issue before this court, not simply a cross-assignment of error. *See* ORAP 5.57(2) (a cross-assignment is appropriate only if, among other things, "the respondent does not seek to reverse or modify the judgment on appeal"); *Truck Insurance Exchange v. Friend*, 253 Or App 527, 528 n 2, 291 P3d 743 (2012), *rev den*, 353 Or 562 (2013) (a cross-appeal was necessary, and the respondent's cross-assignment of error was insufficient, where the respondent sought modification and reversal of part of the judgment, "rather than reversal of an intermediate ruling of the trial court").

Thus, we are not able to address whether the trial court erred when it ruled that SB 5510 did not bring money into the treasury and, therefore, declared that SB 5510 "is not subject to the Oregon Constitution's requirements for bills raising revenue." And, unless we addressed that point, it would be an abstract exercise for us to analyze whether the ESA is a tax, as that question has no practical significance for purposes of the Origination Clause unless the bill that levies the tax also brings money into the treasury—precisely the question that is not properly before us on appeal. Consequently, anything we said about whether the ESA is a tax would not have any practical effect on the parties. Thus, regardless of whether the "ESA as tax" question was moot below, it is a moot question as presented in this appeal. *See Kerr v. Bradbury*, 340 Or 241, 244, 131 P3d 737, *adh'd to on recons*, 341 Or 200 (2006) (when a court's decision no longer would have a practical effect on the parties, the case is moot, and any opinion the court issued would be advisory). Moreover, that question would be challenging to analyze as an abstract matter, without referring to the aspect of the Origination Clause analysis that is not properly before us on appeal, as the term "tax" can have different meanings in different contexts. Under the circumstances, we therefore decline to exercise any discretion we might have to address that issue. *See Couey*, 357 Or at 522 (courts are not required to rule in moot cases, but they must determine "whether it is appropriate to adjudicate an otherwise moot case under the circumstances of each case").[11]

C.   *Attorney Fees*

In a judicial review proceeding under ORS 183.484, an award of attorney fees to the petitioner is mandatory "if the court finds in favor of the petitioner and determines that

---

[11] In some circumstances, a challenge to a trial court's ruling that otherwise would be moot on appeal is not moot because we must address the correctness of that ruling to determine whether the trial court erred in awarding attorney fees. *See, e.g.*, *Select Reform Committee of Jefferson v. City of Jefferson*, 306 Or App 239, 247, 474 P3d 399 (2020) (because challenged attorney fee award was premised on the correctness of the trial court's ruling on the merits, that award prevented the merits issue from being moot). As the next section of this opinion indicates, we need not resolve the "ESA as tax" question to determine whether the trial court erred in awarding petitioners attorney fees, so the attorney fee award does not prevent the question from being moot.

the state agency acted without a reasonable basis in fact or in law." ORS 183.497(1)(b). Here, having ruled largely in petitioners' favor on the cross-motions for summary judgment, the trial court imposed attorney fees under ORS 183.497(1)(b) based on its determination that ODOE acted without a reasonable basis in fact or in law when it failed to follow the requirements of ORS 469.421(8)(b) and "when it insisted that the 2016 ESA was a fee not a tax."

For the reasons that follow, we reverse the supplemental judgment, which reflects the trial court's award of attorney fees. First, with respect to ODOE's alleged violation of ORS 469.421(8)(b), we have reversed the trial court's decision to set aside the 2016 ESA orders as a remedy for any such violation. Consequently, even assuming that ODOE did not comply with ORS 469.421(8)(b), petitioners are not entitled to any relief in this proceeding as a result. Petitioners are not entitled to attorney fees under ORS 183.497(1)(b) in relation to an issue on which they ultimately did not prevail, and which will not result in them obtaining any sort of relief from ODOE's order. *See G.A.S.P. v. Environmental Quality Commission*, 222 Or App 527, 540, 195 P3d 66 (2008) (a decision is "in favor" of a petitioner for purposes of ORS 183.497(1) if the court has resolved a dispute so that some significant portion of the challenged agency order is "altered or invalidated in a manner which is (or appears ultimately likely to be) to the petitioner's benefit") (internal quotation marks omitted).

Second, although we have declined to resolve whether the ESA is a tax, we conclude that ODOE did not act "without a reasonable basis in fact or in law" when it argued that the ESA is not a tax, but a fee. An agency's erroneous interpretation of a law does not, by itself, establish that the agency's interpretation was unreasonable so as to mandate an award of attorney fees. *Kaib's Roving R.Ph. Agency v. Employment Dept.*, 338 Or 433, 446, 111 P3d 739 (2005) ("An agency's interpretation of a statute may be legally incorrect but not unreasonable. In such a case, a mandatory award of fees is not appropriate."). Accordingly, fees will not be justified under ORS 183.497(1)(b) where "reasonable minds could differ" as to the law. *North Pacific Supply Co., Inc. v. Emp. Div.*, 100 Or App 553, 558, 787 P2d 495, *rev den*, 310 Or

121 (1990); *see McKean-Coffman v. Employment Div.*, 314 Or 645, 649, 842 P2d 380 (1992) (agency's reliance on the plain meaning of a statutory term, even though ultimately erroneous, had a reasonable basis in law).

Thus, appellate courts have upheld or imposed fees under ORS 183.497(1)(b) only in more extreme circumstances, such as when (1) an agency either ignored provisions of its own governing statutes or was unaware of them, *Kaib's*, 338 Or at 446; (2) an agency "was well aware that its position had no statutory basis," *White v. Employment Div.*, 77 Or App 35, 40, 711 P2d 196 (1985); (3) an agency acted contrary to "a well-known and understood rule of administrative law to which an agency can fairly be expected to adhere without prompting," *Douglass v. Adult and Family Services Div.*, 64 Or App 439, 442, 668 P2d 1232 (1983); or (4) an agency seemed "incapable of following" pertinent "decisional law" that was "extensive, well-settled and clear enough for an agency's guidance," and the agency's action was "arbitrary to a significant degree." *Ponderosa Inn, Inc. v. Employment Div.*, 64 Or App 443, 446, 668 P2d 1233, *rev den*, 296 Or 120 (1983).

Here, the trial court ruled that ODOE had acted unreasonably in arguing that the ESA is not a tax because that argument "was counter to case law addressing an almost identical version of the law." We understand the trial court to have been referring to *Frank*, 293 Or 374, on which the court had relied in ruling in petitioners' favor on the merits of the "ESA as tax" question. In our view, ODOE did not act unreasonably (and has not acted unreasonably on appeal) in arguing that *Frank* does not answer the question of whether the present version of the ESA is a tax for purposes of the Origination Clause analysis. In arguing that the ESA is a fee, not a tax, ODOE has relied on decisions of this court and the Supreme Court that discuss the factors that distinguish taxes from fees, and it has applied those factors to the present version of the ESA in asserting that the ESA is not a tax. Moreover, ODOE has not ignored *Frank*, overlooked its holding, or otherwise acted analogously to the agencies whose actions mandated attorney fee awards in the cases listed above. To the contrary, ODOE has argued that *Frank* does not control because it analyzed whether

the then-extant version of the ESA was a tax for purposes of a different provision of the Oregon Constitution, not the Origination Clause. On appeal, ODOE also has pointed out that the *Frank* opinion was not focused on distinguishing taxes from fees and that the opinion seems to have used those terms interchangeably in referring to the version of the ESA at issue in that case.

Whether or not ODOE's arguments would prevail if presented on appeal in a case in which the "ESA as tax" question was not moot, those arguments have a reasonable basis in law, and they had a reasonable basis as presented to the trial court. The trial court therefore erred when it awarded petitioners attorney fees under ORS 183.497(1)(b).

## V.   CONCLUSION

The trial court erred when it granted in part petitioners' motion for summary judgment, to the extent that the court agreed with petitioners that the 2016 ESA orders should be set aside. The court also erred when it denied the part of ODOE's cross-motion for summary judgment in which ODOE argued that the 2016 ESA orders should not be set aside even if ODOE had failed to comply with ORS 469.421(8)(b). We therefore reverse the general judgment to the extent that it sets aside the 2016 ESA orders and requires ODOE to refund the "ESA amounts" that petitioners paid. We do not address whether the trial court erred when it declared that "Senate Bill 5510 * * * is not subject to the Oregon Constitution's requirements for bills raising revenue" because that question is not properly before us. We do not address whether the trial court erred when it declared that the ESA is a "tax" because that question is moot in the context of this appeal. We reverse the supplemental judgment awarding attorney fees, and we remand for further proceedings consistent with this opinion.

General judgment reversed to extent it sets aside "the Orders imposing the 2016 ESA" and requires "the ESA amounts paid by Petitioners [to] be refunded." Supplemental judgment reversed. Remanded for further proceedings consistent with this opinion.